MICHAEL S. ROBERTSON vs. GASTON SNOW & ELY BARTLETT.

Suffolk. January 4, 1989. — April 6, 1989.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Negligence, Attorney-client relationship. *Negligence*, Attorney. *Deceit. Actionable Tort. Practice, Civil*, New trial, Trial jury-waived.

With respect to claims against a law firm alleging malpractice, misrepresentation, and failure to disclose certain material information to the plaintiff, the judge did not abuse his discretion in allowing the defendant's motion for a new trial on the ground that the jury's verdict was against the weight of the evidence on all three of the plaintiff's theories of recovery. [520-525]

At the jury-waived retrial of claims against a law firm alleging malpractice, misrepresentation, and failure to disclose certain material information to the plaintiff, the judge correctly concluded that the plaintiff had not proved the existence of an attorney-client relationship between himself and the defendant law firm, that the plaintiff had not proved the elements of the tort of misrepresentation, and that the law firm owed no duty to the plaintiff to make the disclosure in question. [525-527]

A judge's warranted finding that no attorney-client relationship existed between a plaintiff and a defendant law firm was fatal to the plaintiff's claim under G. L. c. 93A based on the firm's actions and omissions in their alleged legal representation of him. [527]

CIVIL ACTION commenced in the Superior Court Department on December 28, 1982.

The case was tried before *Lawrence B. Urbano*, J. On retrial, the claims alleging malpractice and misrepresentation were heard by *Thomas R. Morse*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel F. Featherston, Jr.*, for the plaintiff.

*Richard W. Renehan* (*Charles R. Dougherty* with him) for the defendant.

LYNCH, J. The plaintiff, Michael S. Robertson, claims that the law firm Gaston Snow & Ely Bartlett (Gaston Snow) is liable to him for malpractice, misrepresentation, and a violation of G. L. c. 93A.[1] The malpractice and misrepresentation counts were tried to a jury. In answering special questions the jury found that: (1) there was an attorney-client relationship between the plaintiff and Gaston Snow; (2) Gaston Snow failed to exercise reasonable care in representing the plaintiff, (3) Gaston Snow's negligence proximately caused the plaintiff to lose his employment; (4) Gaston Snow intentionally or negligently misrepresented a material fact to the plaintiff about the prospects of employment; (5) Gaston Snow failed to disclose to the plaintiff a material fact about the prospects of employment; (6) the plaintiff justifiably relied on either Gaston Snow's misrepresentation or nondisclosure; (7) either the misrepresentation or nondisclosure caused the plaintiff to lose his employment; and (8) the plaintiff suffered $500,000 in damages. The judge, however, found in favor of Gaston Snow on the G. L. c. 93A count, based in part on his finding that there was no attorney-client relationship between the plaintiff and Gaston Snow.

Gaston Snow moved for a judgment notwithstanding the verdict and for a new trial on the malpractice and misrepresentation counts. The judge denied the motion for judgment notwithstanding the verdict because, "[i]f the jury believed all of the plaintiff's testimony and disbelieved all other evidence where conflicting, the plaintiff just passes the [judgment] N.O.V. test . . . ." However, the judge allowed Gaston Snow's motion for a new trial, ruling that the verdict was against the weight of the evidence, and that "the jury failed to exercise an honest and reasonable judgment in accordance with the principles of law applicable to these counts."

The new trial was conducted without a jury on the basis of the transcript from the first trial, the exhibits, certain stipulations, and one additional exhibit which had not been introduced

---

[1] Prior to trial, the plaintiff waived two other counts which alleged an intentional interference with an advantageous business relationship and civil conspiracy.

at the first trial.[2] There was no live testimony. That trial judge found and ruled for Gaston Snow. The plaintiff filed a motion for a new trial "or other appropriate relief." The motion was based, in part, on the fact that the judge issued his decision without first giving the parties the opportunity for final argument. The judge then scheduled a hearing at which both parties presented oral argument, and the plaintiff submitted a supplemental request for findings.

The judge issued a memorandum and order affirming his earlier decision and directed that judgment enter for Gaston Snow. The judge also denied the plaintiff's motion to alter or amend the findings and judgment. The plaintiff appealed, and we transferred the case here on our own motion. We affirm.

On appeal, the plaintiff argues that: (1) the first trial judge abused his discretion in granting Gaston Snow's motion for a new trial, and therefore, the jury verdict in favor of the plaintiff should be reinstated; (2) since the evidence at the second trial was entirely documentary, we should review the case de novo and, based on the de novo review, find Gaston Snow liable; (3) if we do not find in favor of the plaintiff, we should at least grant a new trial because the second judge's failure to allow final argument before rendering his decision violated the plaintiff's due process rights, and (4) the first judge's findings on the G. L. c. 93A claim were clearly erroneous.

The relevant evidence can be summarized as follows. Robertson Factories, Incorporated (old corporation), was founded in 1925 by the plaintiff's father, C. Stuart Robertson (C. Stuart). The old corporation, whose primary business was manufacturing curtains, had as its principal customer Sears, Roebuck & Co. (Sears). The defendant Gaston Snow served as the old corporation's outside counsel from the mid-1970's until the corporate reorganization which took place in 1979. Gaston Snow also represented the plaintiff personally in various legal matters during the mid-1970's. But, as of 1979, all such

---

[2] Pursuant to a joint request for a special assignment, another judge in the Superior Court heard the retrial.

representation of the plaintiff had ceased (except for the retention of his will which Gaston Snow had previously drawn).

In April, 1979, at the request of the old corporation, Gaston Snow prepared an analysis for a proposed reorganization of the corporation. The analysis addressed three objectives: (1) to "[p]rovide a predictable income for all current stockholders"; (2) to diversify and increase the liquidity of the assets of the old corporation for estate tax purposes, and (3) to "deploy stock in ongoing management with possibility of substantial leveraged growth." The plan called for the sale of all the old corporation's assets to a new corporation, Robertson Factories, Inc. (new corporation), which would continue to operate the business and would be owned by members of the Robertson family active in the business, and senior, nonfamily members of the old corporation management, including William F. Washburn (Washburn).

In July, 1979, C. Stuart wrote to the plaintiff stating that senior managers at Sears wanted assurances that the plaintiff would not control the new corporation or be the one with whom they would be dealing. C. Stuart told the plaintiff that Sears wanted to work with Washburn, and further that, at the next meeting of the board of directors, Washburn would replace the plaintiff as president. At the next meeting, Washburn was elected president and chief executive officer, the plaintiff was elected chairman of the board, and C. Stuart became chairman of a newly-formed executive committee. Thereafter, the plaintiff wrote to his brother-in-law, Mr. James P. Whitters, III (Whitters), a Gaston Snow partner and a director of the old corporation, expressing concerns about the proposed reorganization.

On October 31, 1979, the plaintiff met with Mr. Richard N. Hoehn (Hoehn) and other Gaston Snow attorneys to discuss the restructuring. At the meeting the plaintiff raised, among other things, the question whether he or anyone else would receive an employment contract with the new corporation. While Hoehn indicated that the subject of an employment contract was reasonable, neither he nor any other attorney ever assured the plaintiff that he would receive an employment

contract with the new corporation. At this meeting the plaintiff did not ask Gaston Snow to represent him individually in the restructuring, nor did Gaston Snow offer such representation.

Washburn told the plaintiff that he would have a position within the new corporation commensurate with his abilities, but if nothing could be found for him, the plaintiff would not have a job. He asked Washburn whether he knew of any position on that basis; Washburn told the plaintiff there was nothing at that time.

On November 21, 1979, the plaintiff wrote a memorandum, which was read by Hoehn, detailing his concerns about the reorganization, including the issue of employment contracts for himself, Washburn, and Philip S. Robertson (Philip). After the November 28, 1979, shareholders' meeting, where the board of directors approved the restructuring, C. Stuart asked Washburn about the plaintiff's role in the new corporation. Washburn said that, because the new corporation was not going to be a family-run business, the plaintiff would have to convince the new ownership that he would earn any salary he received, which C. Stuart agreed was fair.

The written agenda for the closing did not include the topic of employment contracts, although the topic was included initially in a Gaston Snow memorandum outlining the sale. The plaintiff requested and received from Gaston Snow a sample employment agreement, which it had prepared for an unrelated transaction involving another client. Although the sample indicated a five-year term, which the plaintiff had suggested in his November 21, 1979, memorandum, several other aspects of the agreement indicated that it was inapplicable to either the plaintiff or the new corporation. The plaintiff never discussed the sample agreement with Hoehn or anyone else at Gaston Snow. Prior to the closing Washburn, the president and chief executive officer of the old corporation, told Hoehn that none of the officers or employees at the new corporation would have employment contracts. Gaston Snow did not disclose this information to the plaintiff.

The closing took place on December 27, 1979. The stockholders of the new corporation were the plaintiff (22.5%), his

brother Philip (22.5%), Washburn (22.5%), Whitters (5.25%), and seven other nonfamily members of senior management (27.25%). Thus, Robertson family members (the plaintiff, Philip, and Whitters) owned 50.25% of the new corporation stock. No one raised the issue of employment contracts at the closing.

In January, 1980, Philip Robertson, Whitters, Washburn, and two nonfamily shareholders executed a voting agreement which provided that, for a five-year period, if any three concurred on a candidate for the board of directors, the other two would also vote for that candidate. The agreement did not control the vote of the parties on any other matters. At Washburn's request, Gaston Snow drafted the agreement before the closing. Neither Washburn nor Gaston Snow told C. Stuart or the plaintiff about the agreement. In May, 1980, the directors of the new corporation, on Washburn's recommendation, voted to terminate the plaintiff's employment and to remove him as chairman of the board.

1. *The motion for a new trial.* It is a well-established principle that "[t]he granting or denying of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge." *Bergdoll* v. *Suprynowicz,* 359 Mass. 173, 175 (1971). See *Hartmann* v. *Boston Herald-Traveler Corp.,* 323 Mass. 56, 59-61 (1948); *Perry* v. *Manufacturers Nat'l Bank,* 315 Mass. 653, 656 (1944). In ruling on such a new trial motion "the judge must necessarily consider the probative force of the evidence and not merely the presence or absence of any evidence upon the disputed point." *Hartmann* v. *Boston Herald-Traveler Corp.,* *supra* at 60. Ruling on a motion for a new trial presents a limited question of fact, because the judge should not decide the case as if sitting without a jury; rather, the judge should only set aside the verdict if satisfied that the jury "failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law." *Id.* However, the application of this standard is within the sound discretion of the trial judge and the grant or denial

of a new trial will be disturbed only if there has been an abuse of that discretion.[3] *Id.* at 60-61, and cases cited.

The plaintiff's claims were submitted to the jury on three theories. First, that Gaston Snow represented the plaintiff in relation to the restructuring of the old corporation and the plaintiff's prospective employment with the new corporation, and that Gaston Snow was negligent in that representation. The second theory was that Gaston Snow intentionally or negligently made a false representation of a material fact to the plaintiff about his prospective employment with the new corporation. The third theory was that Gaston Snow, under a duty to do so, failed to disclose to the plaintiff a material fact about his prospective employment with the new corporation. After reviewing the evidence, we conclude that it was not an abuse of discretion for the judge to conclude that the jury verdict was against the weight of the evidence, and thus we affirm the order granting a new trial.

---

[3] The plaintiff argues that the first trial judge failed to apply the correct standard because his findings do not indicate that the jury verdict was "manifestly" or "greatly" against the weight of the evidence, which the plaintiff argues shows that the judge "was unaware that he could not just substitute his view of the facts for that of the jury." However, the judge's express finding that "the jury failed to exercise an honest and reasonable judgment in accordance with the principles of law applicable to these counts," indicates that he understood and applied the correct standard. See *Hartmann* v. *Boŝton Herald- Traveler Corp.*, 323 Mass. 56, 60 (1948).

The plaintiff also urges us to adopt the more stringent standard used by Federal courts to review the granting, as opposed to a denial, of a motion for a new trial on the basis that the verdict was against the weight of the evidence. In the Federal courts a judge's discretion in granting a new trial is limited and a jury's verdict should not be set aside "unless it is quite clear that the jury has reached a seriously erroneous result." *Coffran* v. *Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.), cert. denied, 459 U.S. 1087 (1982), quoting *Borras* v. *Sea-Land Servs., Inc.*, 586 F.2d 881, 887 (1st Cir. 1978). This less deferential review of orders granting new trials assures that judges will not "simply substitute [their] judgment for that of the jury, thus depriving the litigants of their right to trial by jury." *Rosenfield* v. *Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). However, even under the Federal standard, the "court's discretion to grant a new trial remains large, and will not be disturbed if reasonably based." *Coffran* v. *Hitchcock Clinic, Inc.*, *supra* at 6 n.1. Because we conclude that, even under the less deferential Federal standard, it was not an abuse of discretion to grant Gaston Snow's motion for a new trial, we need not reach the issue whether we should adopt a less deferential standard of review.

a. *Negligent representation.* In order to find Gaston Snow liable, it must be shown that the plaintiff was a Gaston Snow client with respect to the restructuring of Robertson Factories in 1979 and the plaintiff's prospective employment with the new corporation and that Gaston Snow represented the plaintiff's personal interests. *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817 (1983).

We recognize that the existence of an attorney-client relationship is a question to be resolved by the trier of fact, *Page* v. *Frazier*, 388 Mass. 55, 61 (1983), and that "the relationship can be implied from the conduct of the parties" and need not be expressed. *Id.* at 62. See *DeVaux* v. *American Home Assurance Co.*, *supra* at 817-818. However, we also recognize that "[a]n attorney for a corporation does not simply by virtue of that capacity become the attorney for . . . its officers, directors or shareholders." 1 R.E. Mallen & J.M. Smith, Legal Malpractice § 7.6 (3d ed. 1989). Also, the fact that an attorney agreed to, or did, represent a client in a particular matter does not necessarily create an attorney-client relationship as to other matters or affairs of that client. *DeVaux* v. *American Home Assurance Co.*, *supra* at 816 n.6.

To show the existence of an attorney-client relationship the plaintiff points to Gaston Snow's prior representation of him, the fact that Gaston Snow still retained the original of his will in its office, and the plaintiff's testimony that he believed that Gaston Snow would be representing his interests. Gaston Snow's evidence was that neither Whitters nor Hoehn thought that the plaintiff was a client whose interests guided Gaston Snow's actions during the restructuring. Hoehn testified that Gaston Snow was representing the interests of both the old and new corporations. His uncontroverted testimony was that, at no time during the reorganization process, did the plaintiff ever request personal representation, nor did Hoehn ever indicate to the plaintiff that Gaston Snow was representing his interests. Regarding the sample employment agreement sent to the plaintiff, Hoehn testified that the plaintiff neither discussed it with him nor returned it completed with any personal information. It was also uncontroverted that Gaston Snow

had no specific contract to represent the plaintiff in the reorganization, and that they billed the corporation for their services. In spite of several written and many oral communications between the plaintiff and the other participants, the plaintiff introduced no evidence of a specific reference to Gaston Snow as his personal counsel. His claim is essentially, therefore, that he thought that Gaston Snow represented him but that he failed to communicate this thought to anyone. On this evidence we cannot say that it was an abuse of discretion for the first trial judge to conclude that the jury's finding of an attorney-client relationship was against the weight of the evidence.[4]

b. *Misrepresentation.* In order for the plaintiff to recover for either intentional or negligent misrepresentation, the plaintiff must prove that Gaston Snow falsely represented that the plaintiff would be employed in a position with the new corporation, and that he reasonably relied on such misrepresentation. *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963). See Restatement (Second) of Torts § 526 (1977). Even if we assume the questionable hypothesis that Gaston Snow's conduct constituted an implied representation, see *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52, 55-56 (1941), the evidence does not support a finding that the plaintiff reasonably relied to his detriment on any such representation. The plaintiff admitted that he received no assurances regarding employment with the new corporation. Also, the plaintiff knew Washburn was responsible for fixing the salaries of the other officers of the new corporation, and, in fact, voted in favor of conferring that responsibility on Washburn. More importantly, however, Washburn personally told the plaintiff that his job was at risk, and the plaintiff's letter of December 18, 1979, to his father voiced this concern.

c. *Nondisclosure.* This claim required a finding that Gaston Snow, having a duty to do so, failed to disclose a material fact to

---

[4] We note that the judge, as the trier of fact on the plaintiff's c. 93A claim, specifically found that "the plaintiff has failed to sustain his burden of proof that an attorney-client relationship was established pursuant to which [Gaston Snow] was to represent the plaintiff as an individual during the process of restructuring the family business."

the plaintiff. Restatement (Second) of Torts § 551 (1977). Since there was an insufficient basis for finding that an attorney-client relationship existed between the plaintiff and Gaston Snow, and because it was uncontroverted that Gaston Snow represented the corporations during the restructuring process, any duty to disclose owed to the plaintiff would have had to have been as a nonclient.[5] We have recognized that an attorney owes a duty to nonclients who the attorney knows will rely on the services rendered. *Page* v. *Frazier*, 388 Mass. 55, 63-64 (1983). However, we recognized that, "where an attorney is also under an independent and potentially conflicting duty to a client," we are less likely to impose a duty to nonclients. *Id*. at 63. The evidence indicated that the plaintiff had over twenty years of business experience, that he admitted that Gaston Snow did a "top notch" job in achieving C. Stuart's three goals in the restructuring, and that in August, 1979, when the plaintiff knew Gaston Snow was working with his brother Philip and Washburn on the details of the reorganization, he did not protest his exclusion from these discussions. More importantly, C. Stuart told the plaintiff that the corporation's most important customer, Sears, wanted assurances that the plaintiff would not control the business or be the person with

---

[5] We note that attorneys serving as counsel to a corporation owe a duty to act according to the interests of the corporation and not in the interests of a nonclient stockholder, director, officer, employee, or other representative of the corporation. See *Evans* v. *Artek Syss. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983), and sources cited.

On appeal the plaintiff argues that, even if there is no attorney-client relationship between himself and Gaston Snow, a duty to disclose arises from the duties inherent in the undisputed attorney-client relationship between Gaston Snow and both the old and new corporations. However, the plaintiff cannot assert, in this personal action, any alleged breach of duty Gaston Snow owed to the corporation. Any claim, made by a shareholder, based on Gaston Snow's failure to disclose to the corporation the voting agreement or the lack of employment contracts, must be through a derivative action. See *Bessette* v. *Bessette*, 385 Mass. 806, 809-810 (1982); *Hirshberg* v. *Appel*, 266 Mass. 98, 100-101 (1929); *In re Nardone*, 69 Bankr. 481, 486-487 (D. Mass. 1987); *Karris* v. *Water Tower Trust & Sav. Bank*, 72 Ill. App. 3d 339, 354 (1979); *Bevelheimer* v. *Gierach*, 33 Ill. App. 3d 988, 993-994 (1975). Compare *Greening* v. *Klamen*, 652 S.W.2d 730, 733 (Mo. Ct. App. 1983) (shareholders could maintain personal action because of allegation that they paid retainer for personal representation).

whom they would have to deal. These are not the circumstances where attorneys should be charged with a plaintiff's "foreseeable reliance" on their services to a client. See *Page* v. *Frazier*, *supra* at 64-65.[6] On the basis of this evidence, it was not an abuse of discretion for the judge to conclude that the jury's finding that Gaston Snow owed the plaintiff such a duty to disclose was against the weight of the evidence.

2. *The retrial.* The second trial was jury-waived and was conducted on the basis of the written record of the first trial. The standard of review of findings of facts by a trial judge in a jury-waived case is set forth in Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974): "Findings of facts shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The plaintiff asks us to deviate from this general rule and review this case de novo, because there was no live testimony at the second trial. See *Ward* v. *McGlory*, 358 Mass. 322, 323 (1970); *Hiller* v. *Submarine Signal Co.*, 325 Mass. 546, 550-551 (1950); *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845, 848 (1981); *Muzichuk* v. *Liberty Mut. Ins. Co.*, 2 Mass. App. Ct. 266, 268-269 (1974). It is unnecessary for us to decide if in appropriate circumstances we might depart from the "clearly erroneous" standard of review where all the evidence was documentary because, even if we apply the de novo standard, we reach the same conclusions as the trial judge.[7]

The judge found that there was no attorney-client relationship between the plaintiff and Gaston Snow with respect to the

---

[6] In *Page* v. *Frazier*, *supra* at 65, we noted that the plaintiffs in that case were warned that the attorney represented the bank's interest and that "the plaintiffs might retain their own attorney to represent their interests." Although Gaston Snow did not specifically advise the plaintiff to retain independent counsel to protect his personal interests in the restructuring, we have already indicated that any reliance on the part of the plaintiff was unreasonable, obviating the need for an express warning that the corporations' and the plaintiff's interests varied.

[7] The plaintiff argues on appeal that, "[i]f [Gaston Snow] is not held liable, the court must, at the very least, order a third trial, because the denial of plaintiff's right to make final argument at the . . . jury-waived

restructuring. We conclude that the judge's determination was correct. Gaston Snow's previous representation of the plaintiff did not, by itself, create an attorney-client relationship in which it was to protect his interests in the restructuring. See *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 816 & n.6 (1983). Furthermore, because the plaintiff never requested Gaston Snow to represent him in this matter, never was told that Gaston Snow would protect his interests, and was never billed for any services there is little basis to imply the existence of an attorney-client relationship.[8]

The judge also found that the plaintiff failed to prove all the elements of misrepresentation, and specifically found that, if the plaintiff did rely on Gaston Snow representation, "he did so unreasonably." Based on our review of the evidence and the rational inferences drawn therefrom, we agree with the judge that the plaintiff has failed to sustain his burden of proof. Neither the sample employment agreement nor Gaston Snow's conduct at the October 31, 1979, meeting with the plaintiff can be said to constitute an implied representation that the plaintiff would receive an employment contract. More importantly, as we indicated in discussing the motion for a new trial, the evidence does not support a finding that the plaintiff reasonably relied on any Gaston Snow representation.

The plaintiff also asserts that Gaston Snow is liable because it failed to disclose the voting agreement between Washburn,

---

trial" violated the plaintiff's right to due process. Without deciding whether the circumstances under which the judge decided the case constituted a deprivation of due process, we conclude that the plaintiff is not entitled to a third trial since our review of the case is, in effect, de novo.

[8] We have previously stated that "[a]n attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.' " *DeVaux* v. *American Home Assurance Co.*, *supra* at 817-818, quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977).

Whitters, the plaintiff's brother Philip, and two other stockholders, and failed to disclose that there would be no employment contracts at the new corporation. As we stated earlier, the plaintiff cannot succeed on this theory because the evidence does not support his argument that Gaston Snow owed him, personally, a duty to make such a disclosure.

3. *The G. L. c. 93A claim.* The plaintiff alleged in his complaint that "Gaston Snow's actions and omissions *in their legal representation of the plaintiff* . . . constitute 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' " and therefore violate G. L. c. 93A, § 2 (emphasis supplied). Thus, proof of an attorney-client relationship between the plaintiff and Gaston Snow is critical to the plaintiff's c. 93A claim. The first trial judge found in favor of Gaston Snow because, inter alia, the plaintiff failed to prove the existence of an attorney-client relationship. This finding cannot be set aside "unless clearly erroneous." Mass. R. Civ. P. 52 (a). Given our earlier discussion regarding this issue, the judge's finding was not clearly erroneous.

4. *Conclusion.* On the record before us we rule that there was no abuse of discretion by the first trial judge in vacating the jury verdict on the ground that it was against the weight of the evidence. In reviewing the evidence submitted at the retrial, we reach the same conclusions as the second trial judge and, therefore, affirm the judgment entered in favor of Gaston Snow on the plaintiff's malpractice and misrepresentation claims. Since the plaintiff has briefed and argued in this court that he is entitled to de novo review, and we have afforded him de novo review, we need not reach the plaintiff's claim that he did not have the opportunity to present final argument until after the judge had rendered his decision. Also, the first trial judge's findings in favor of Gaston Snow on the plaintiff's G. L. c. 93A claim were not "clearly erroneous" and the judgment on that claim is affirmed.

*So ordered.*