FANARAS ENTERPRISES, INC. *vs.* ROGER ALLEN DOANE &
another[1]; FIRST STATE INSURANCE COMPANY, intervener.

Essex. January 12, 1996. - July 3, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY,
& FRIED, JJ.

*Insurance,* Legal malpractice insurance. *Attorney at Law,* Attorney-client
relationship, Malpractice.

In a legal malpractice action the plaintiff corporation did not establish that
there was an attorney-client relationship with respect to certain loans of
the plaintiff to the defendant attorney, with the result that the plaintiff's
losses arising from the attorney's failure to repay the loans were not
within the coverage provisions of the attorney's professional insurance
policy. [124-126] FRIED, J., dissenting, with whom WILKINS and
ABRAMS, JJ., joined, were of opinion that the matter should not have
been determined on a motion for summary judgment.

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 25, 1987.

The case was heard by *Barbara J. Rouse,* J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Roger D. Turgeon* for the plaintiff.

*Erik Lund* (*Jon C. Cowen* with him) for the intervener.

O'CONNOR, J. This case began as an action against Roger
Allen Doane (Doane), an attorney, and the Law Offices of
Roger Allen Doane to recover for legal malpractice. Then,
Doane's malpractice insurer, First State Insurance Company
(First State), intervened, seeking a declaration that there was
no coverage under the policy. First State moved for summary
judgment. The plaintiff opposed First State's motion and
moved for summary judgment in its own favor. A judge in
the Superior Court allowed First State's motion, denied the

___

[1]The Law Offices of Roger Allen Doane.

plaintiff's motion, and declared that the plaintiff's claims are not covered by the policy. The plaintiff appealed and we transferred the case here on our own initiative. We affirm.

Among the materials available for the judge's consideration of the motions for summary judgment was a long and detailed affidavit executed by the plaintiff's president, Joseph Fanaras. We quote relevant portions thereof as follows:

> "The entries on the books and records of Fanaras Enterprises, Inc., made at the time of the transactions recorded therein and not for the purpose of this litigation, show that the Defendant, Roger Allen Doane, was indebted to Fanaras Enterprises, Inc., in the amount of $413,822.85 as of August 20, 1987. . . . The indebtedness results from various loans that the Plaintiff made to [Doane] at [Doane's] request . . . . All moneys that were loaned to [Doane] by Fanaras Enterprises, Inc., were to be repaid at an agreed upon interest rate of 11%. . . . Using an interest rate of 11%, I calculate the amount owing to Fanaras Enterprises, Inc., as of the date of the filing of the Complaint (November 20, 1987) to be $425,307.61. . . . Each of the loans referred to above was made to Attorney Roger Allen Doane, upon his request, and upon his promise to repay the amounts borrowed, with interest at 11% per annum, as soon as he obtained sufficient funds by way of selling one or both of his properties at 35 Beach Road, Salisbury, Massachusetts, or Hale Street, Newburyport, Massachusetts, or by way of obtaining a mortgage loan against either or both of those properties. . . .

> "At all times material hereto, Fanaras Enterprises, Inc., was a client on retainer with the Defendants Roger Allen Doane and the Law Office of Roger Allen Doane. Roger Allen Doane and the Law Office of Roger Allen Doane performed all of the Plaintiff's legal work, on numerous matters, throughout the period when these loans were made. . . . Under the retainer arrangement with the Defendants, Fanaras Enterprises, Inc., paid to Attorney Doane retainer fees of $25,000 per quarter in return for full, total, and immediate access to Mr. Doane's legal advice, and so that Fanaras Enterprises,

Inc., would always receive devoted priority service from Attorney Doane. . . . In addition to quarterly retainer fees, Fanaras Enterprises, Inc., also paid Attorney Doane for specific legal services that he performed. . . .

"At the time of each of the loans I made to Attorney Doane, through Fanaras Enterprises, Inc., Attorney Doane was my attorney, on retainer, and I relied upon him, as my attorney, to protect my interests and the interests of Fanaras Enterprises, Inc., in the sums I loaned to him. . . . At no time did the Defendant, Roger Allen Doane, offer to give, or advise me to obtain, security for the loans that I made to him; at no time did the Defendant advise me to seek the advice of independent counsel concerning the loans that I made to Roger Allen Doane; at no time was I instructed or advised to obtain a mortgage on the Defendant's property to secure the loans that I made to the Defendant. . . . [A]s of the times that Fanaras Enterprises, Inc., made the loans to Attorney Doane, Doane had approximately $1,000,000 worth of equity in his property at Hale Street in Newburyport. . . .

"On or about May 6, 1987, without any prior notice or warning to me and without protecting the interest of Fanaras Enterprises, Inc., Roger Allen Doane granted a mortgage on both of his properties in favor of [Company X] in the amount of $850,000. . . . On or about June 24, 1987, without any prior notice or warning to the Plaintiff and without protecting the interest of Fanaras Enterprises, Inc., Robert Allen Doane granted an additional mortgage on both of his properties in favor of [Company X] in the amount of $630,000. . . .

"Attorney Roger Allen Doane has never paid any of the principal or interest owed to Fanaras Enterprises, Inc. on account of any of the loans mentioned herein. Doane filed bankruptcy in the U.S. Bankruptcy Court in Boston, Massachusetts, on February 11, 1988. . . . Doane's properties at Hale Street in Newburyport and 35 Beach Road, Salisbury have been foreclosed on by other creditors. Fanaras Enterprises, Inc., has never

received any payments from the proceeds of those foreclosures. According to the schedules filed with the Bankruptcy Court by Attorney Doane, Doane has no other assets with which to make any payments of the loans referred to in this Affidavit. . . .

"I feel that the Defendant was negligent at the times that Fanaras Enterprises, Inc., made the loans to him by, among other things, failing to advise me and Fanaras Enterprises, Inc., to seek independent legal advice and/or to secure the loans with a mortgage. I relied on Attorney Doane, at all times, to protect my interests in connection with these loans, and he failed to do that."

The policy provides that First State will "pay on behalf of [Doane] all sums which [Doane] shall become legally obligated to pay as damages because of any claim or claims . . . first made against [Doane] and reported to [First State] during the policy period, arising out of any act, error or omission of [Doane] in rendering or failing to render professional services for others in [Doane's] capacity as a lawyer . . . and caused by [Doane] . . . except as excluded or limited by the terms, conditions and exclusions of this policy." The judge in the Superior Court concluded that "the plaintiff's claims . . . arising out of Doane's failure to repay the loans are not within the coverage of the policy." She explained in her memorandum of decision that "[t]here is no evidence that Doane agreed to represent Fanaras with respect to the loans at issue or that any attorney-client relationship existed between them with respect to the loans. Therefore, Doane owed no duty to provide legal counsel concerning these transactions."

In order to establish its claim as one arising out of Doane's act, error, or omission in rendering or failing to render legal services (legal malpractice), the plaintiff would have the burden at trial to prove that *with respect to the plaintiff's loans to Doane,* Doane and the plaintiff were in an attorney-client relationship. *DaRoza* v. *Arter,* 416 Mass. 377, 381 (1993). *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989). "An attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's profes-

sional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.' " *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817-818 (1983), quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). "All three requirements must be met to establish the relationship." *DaRoza* v. *Arter*, *supra* at 381. Joseph Fanaras's uncontradicted affidavit demonstrates that the plaintiff, Fanaras Enterprises, Inc., would be unable to prove its case at trial.

The fact that the plaintiff paid Doane a substantial retainer "in return for full, total, and immediate access to Mr. Doane's legal advice, and so that Fanaras Enterprises, Inc., would always receive devoted priority service from Attorney Doane," as set forth in Joseph Fanaras's affidavit, is of no consequence. That arrangement clearly contemplated the plaintiff's right to Doane's prompt legal advice *on request*. Nowhere in Fanaras's affidavit or in any of the summary judgment materials is there the slightest suggestion that the plaintiff, through Fanaras or otherwise, requested Doane's advice or assistance with respect to the loans to Doane and obtaining security for their repayment, or with respect to managing the plaintiff's money. To the contrary, the clear implication of the affidavit is that Fanaras did not seek such advice or assistance but merely "relied" on Doane to protect him. That reliance may or may not have been reasonable, but it did not establish an attorney-client relationship or legal malpractice with respect to the loans. It is not enough that, with respect to other matters, the parties were in an attorney-client relationship. *Robertson* v. *Gaston Snow & Ely Bartlett*, *supra* at 522.

The plaintiff's demonstrated inability to prove at trial that, with respect to the plaintiff's loans to Doane, the parties were in an attorney-client relationship, renders S.J.C. Rule 3:07, Canon 5, DR 5-104 (A), as appearing in 382 Mass. 781 (1981), irrelevant to this case. That rule states: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." Violation of a disciplinary rule designed to protect a client's interest "may be some evidence of the attorney's negligence," *Fishman* v. *Brooks*, 396 Mass. 643, 649

(1986), but that is true only in the context of an attorney-client relationship. *Sheinkopf* v. *Stone*, 927 F.2d 1259, 1267 (1st Cir. 1991) ("By its terms the rule presupposes an existing attorney-client relationship").

First State has demonstrated by reference to material described in Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), unmet by countervailing material, that the plaintiff has no reasonable expectation of sustaining its burden at trial to prove that it requested Doane's professional assistance with respect to the loans or that Doane expressly or impliedly agreed to advise the plaintiff with respect to the loans. Therefore, the Superior Court judge properly granted summary judgment to First State and denied the plaintiff's summary judgment motion. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). We affirm the orders and declaratory judgment entered in the Superior Court.

*So ordered.*

FRIED, J. (dissenting, with whom Wilkins and Abrams, JJ., join). I believe that in light of the materials the plaintiff has presented, it may well be able to prove at trial that Doane owed it a duty as an attorney in respect to the loans Doane obtained from it. For that reason, summary judgment should not be granted against Fanaras. We have indeed stated that "the fact that an attorney agreed to, or did, represent a client in a particular matter does not *necessarily* create an attorney-client relationship as to other affairs of that client" (emphasis added). *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989). But in that same case and on the same page we reaffirmed the proposition that "the existence of an attorney-client relationship is a question to be resolved by the trier of fact . . . and that 'the relationship can be implied from the conduct of the parties' and need not be expressed." *Id.*, quoting *Page* v. *Frazier*, 388 Mass. 55, 62 (1983). Accord *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 818 (1983) ("[w]here reasonable persons could differ as to the existence of an attorney-client relationship, this issue must be resolved by the trier of fact," citing *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 57 [Iowa 1977]).

Fanaras alleges that it paid Doane a general retainer fee of

$100,000 per year "in return for full, total, and immediate access to Mr. Doane's legal advice" and for "devoted priority service." Fanaras further claims that Doane performed all of its legal work throughout the period when the loans were made, and that Fanaras "relied upon" Doane as its attorney, to protect its interests. Cf. *Symmons* v. *O'Keeffe,* 419 Mass. 288, 300 & n.11 (1995) (finding no attorney-client relationship where no relationship was established explicitly, "no fee agreement was discussed, no retainer was paid . . . no bill was sent to either plaintiff for services related to the estate plan or execution of the trusts," and letters existed from attorney to plaintiffs suggesting that plaintiffs should consult their own attorneys on a related matter); *Robertson, supra* at 526 ("because the plaintiff never requested Gaston Snow to represent him in this matter, *never was told that Gaston Snow would protect his interests,* and was never billed for any services there is little basis to imply the existence of an attorney-client relationship" [emphasis added]). It was not only a possible, but a reasonable inference from these allegations that the attorney-client relationship existed in respect to the business loans Doane solicited from Fanaras. If Doane had been advising Fanaras about Fanaras's dealings with a building owner for whom Fanaras was doing construction work, and that building owner, in Doane's earshot, had solicited a business loan from Fanaras, a jury would surely have been warranted in finding that the "devoted priority" service, for which Fanaras was paying such a high price, extended — even without an explicit request — to Doane's advising Fanaras about any legal aspects of the loan. Similarly here, the jury might have concluded that Fanaras had put itself in Doane's hands, as far as legal advice went, and that it was a violation of the relationship (if not an attorney-client relationship, then what?) for Doane neither to have advised Fanaras of the need to obtain some security nor, because Doane was now in a conflict of interest situation, to seek outside counsel. Nor would a finding of a conflict somehow preclude a finding of an attorney-client relationship. Much more likely, the conflict was itself a potential breach of Doane's duty, and it would be brazen for Doane to urge that, because of the conflict, there was no relationship on which Fanaras might rely.

Supreme Judicial Court Rule 3:07, Canon 5, DR 5-104

(A), as appearing in 382 Mass. 779, 781 (1981), confirms this conclusion:

> "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

A jury should not be precluded from inferring that an attorney-client relationship *did* exist in precisely such a situation where, because the attorney-client relationship *might* exist, special precautions are in order.[1]

I respectfully dissent.

---

[1]Because the court does not, I do not reach the questions whether First State had received adequate notice of Fanaras's claim or whether an exclusion in the policy barred Fanaras's claim against First State.