Connon, Richard F., J.
This matter is before the Court on the motion of the Defendant, Jack Calech-man (Calechman), to dismiss the complaint under Mass.R.Civ.P. 12(b)(6). This claim arises out of a legal malpractice and breach of fiduciary duty action brought by the plaintiff, Charles Kury (Kury), as beneficiary of the Charles Kury Trust against Calechman and his former employer Brown, Rudnick, Berlack, Israels, LLP (Brown Rudnick). For the following reasons, the defendant’s motion to dismiss is ALLOWED.

BACKGROUND

In March 1988, Edith Ban (Ban), Kury’s aunt, created the Charles Kury Trust (Trust). Ban named Calechman, Livia Rev-Kury (Rev-Kury), Stanley Kaplan (Kaplan) and Alberto Teyssedon (Teyssedon) as trustees of the Trust (collectively, the “Original Trustees”). None of the Original Trustees still serve the trust.[2] Rey-Kury, who is Kury’s mother, and Kaplan are now deceased. Calechman, who was employed by Brown Rudnick and served as an attorney to Ban, Rev-Kury and the Charles Kury Trust, was replaced as Trustee pursuant to a court order in May of 2003.[3]
Ban died on November 18, 1988 and her Will provided that after the disposition of her tangible personal property, the rest residue and remainder of her property was to be distributed to the Trustees of the Charles Kury Trust “. . . to be held by them in Trust for the purposes and on the terms and conditions stated herein.” Shortly after Ban’s death, Kury consulted with Calechman as to his entitlements and rights as the beneficiary of the Trust. Calechman allegedly told Kuiy that his “Aunt’s money was none of his concern and that he was not entitled to anything under the terms of the trust.” Complaint at ¶19. Kury claims that after his Aunt’s death, Calechman and Rev-Kuiy, as Trustees, participated in the transfer of all the real property held by the Trust, except a one-half interest in the property located on Langley Road in Falmouth, Massachusetts, to or for the benefit of Rev-Kuiy. In 1990, Calechman and Rev-Kury also transferred the stock of Cafe Budapest to Rev-Kuiy.[4] Kuiy claims that he never received a distribution or an accounting of the Charles Kury Trust from the time of Ban’s death to the time of Rev-Kuiy’s death in 2003.
Kury filed suit against Calechman and Brown Rudnick on March 20, 2006, alleging Calechman committed legal malpractice and breached his fiduciaiy ditty as Trustee of the Charles Kuiy Trust. Kuiy claims Calechman acted as his attorney in 1988 when Calech-man advised him of his rights under the Charles Kuiy Trust. Kuiy alleges Calechman had reason to know Kury would accept and rely upon Calechman’s advice regarding the Trust and that Kuiy did, in fact, rely upon and accept Calechman’s statement that he was not entitled to anything under the terms of the Trust.
In addition, Kuiy claims Calechman breached his fiduciary duly as Trustee of the Charles Kuiy Trust. Kury alleges Calechman conspired with Rev-Kuiy to transfer assets out of the Trust for the use and benefit of Rev-Kury, in violation of the terms of the Trust. Kuiy claims that he did not know of the inappropriate transfers committed by Calechman and Rev-Kuiy until after Rev-Kury’s death. Kuiy claims that because Calechman failed to provide annual accountings of the Trust he could not have known of the inappropriate actions and self-dealings until Rev-Kuiy’s death in 2003.

DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). In deciding a Mass.R-Civ.P. 12(b)(6) motion, the court must accept a plaintiff s pleaded facts as true, but the court need not accept “legal conclusions cast in the form of factual assertions.” Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). “The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “A complaint is not subject to dismissal if it would support relief on any theoiy of law." Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).

A. Legal Malpractice

In order to sustain a claim for legal malpractice, the plaintiff must show that an attorney-client relationship exists or that the attorney owes a duty to a *201 non-client. An attorney-client relationship can arise through an express contract or an implied contract. An implied contract arises when “(1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney’s professional competence; and (3) the attorney expressly or impliedly agrees or actually gives the desired advice or assistance.” Miller v. Mooney, 431 Mass. 57, 61 (2000) quoting DeVaux v. American Home Assur. Co., 387 Mass. 814, 817-18 (1983). “In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.” Id.
Clearly, an express contract for legal services was not consummated between Kuiy and Calechman. Kuiy argues sufficient factual circumstances exist to support an implied attorney-client relationship. Kuiy saw the defendant for a single consultation and argues that he was justified in relying on Calechman’s legal advice because Calechman had been the long-time family attorney. In addition, Kuiy argues that Calechman was the “admitted legal advisor to the beneficiaries of the trust” based on Calechman’s use of the term “related parties” in an affidavit unrelated to the instant case.[5] Plaintiffs Opposition at page 7. This court does not read the term “related parties,” as used in an unrelated affidavit, to mean that Calechman admitted to being the legal advisor to the trust beneficiaries. Calechman’s position as legal advisor to the trustees and his position as trustee would preclude such a meaning.
It is clear that Kuiy sought the legal advice from Calechman and the advice sought was within the scope of Calechman’s professional competence, but what is not clear is whether Calechman offered Kuiy legal advice or whether detrimental reliance can be established. Kuiy argues that Calechman offered legal advice knowing that Kuiy would accept it as true and did nothing to negate Kuiy’s acceptance of the advice. Seemingly, Kuiy is arguing that this is the appropriate set of circumstances to find that Kuiy detrimentally relied on Calechman’s advice. This court fails to adopt Kuiy’s view of the consultation between himself and Calechman. Being told that “his aunt’s money was none of his concern and that he was not entitled to anything” can hardly be considered legal advice. “To imply an attorney-client relationship . . . the law requires more than an individual’s subjective, unspoken belief that the person with whom he is dealing, who happens to be a lawyer, has become his lawyer.” Sheinkopf v. Stone, 927 F.2d 1259, 1265 (1st. Cir. 1991). Kuiy’s assertion that an attorney-client relationship was established is based on nothing more than Kury’s subjective belief that Calechman was his attorney. This court finds nothing in the short exchange between Kuiy and Calechman that would suggest Calechman became Kuiy’s attorney or that Calechman expressly or impliedly offered legal advice.
Generally, an attorney’s liability for legal malpractice is limited to a duty owed to clients, DeVaux, Mass. at 817, however, Massachusetts case law has carved out an exception to this general rule based on foreseeable reliance. Spinner v. Nutt, 417 Mass. 549, 544. To qualify for the foreseeable reliance exception, two requirements must be met. First, a duty is only owed to non-clients “who the attorney knows will reasonably rely on the services rendered.” Robertson v. Gaston Snow and Ely Bartlett, 404 Mass. 515, 524 (1989). Second, when the situation involves potentially conflicting duties between the attorney’s actual client and the third party claiming the benefit of reliance, courts are less likely to impose a duty to non-clients. Daroza v. Arter, 416 Mass. 377, 383 (1993); Robertson, 404 Mass. at 524.
The “conflicting duties” prong of the analysis frequently arises in the context of trust administration. The interests of the trust and the interests of the beneficiaries often conflict and “should we decide that a trustee’s attorney owes a duty not only to the trustee but also to the trust beneficiaries, conflicting loyalties could impermissibly interfere with the attorney’s task of advising the trustee . . . This we refuse to do.” Spinner, 417 Mass. at 553. The facts of this case differ slightly from Spinner in that Calechman not only served as the personal attorney to both Ban and Rev-Kuiy, but he also drafted Charles Kuiy Trust and served as a trustee. Calechman’s personal representation of Ban and Rev-Kuiy as well as his service as trustee creates even more potential for conflict than was present in the Spinner case. In Spinner, the SJC found that because of their conflicting loyalties the trustee’s attorney did not owe a duty of care to a beneficiary, and this court, likewise, fails to find that Calechman owed a duty of care to Kuiy.

B. Breach of Fiduciary Duty

The statute of limitations in tort actions generally runs for three years following the date of injuiy, G.L.c. 260, §2A, but the courts have long held that, in certain circumstances, basic fairness dictates a more flexible approach. Riley v. Presnell 409 Mass. 239, 243 (1991) (where legislature has not defined when a cause of action accrues for limitation purposes, that determination has been left to the courts). For the tort of breach of fiduciary duty, the statute of limitations is tolled until the plaintiff has actual knowledge that he or she has been injured by the fiduciary’s conduct. Lattuca v. Robsham, 442 Mass. 205, 213 (2004) (“We consistently have held that a cause of action for breach of fiduciary duty does not arise until the beneficiary is aware that repudiation has occurred”). “Mere suspicion or mere knowledge that the fiduciary has acted improperly does not amount to actual knowledge that the plaintiff has suffered harm.” Doe v. Harbor Schools, Inc., 446 Mass. 245, 255 (2006). A cause of action accrues “for limitation purposes when a plaintiff knows . . . facts sufficient to make a causative link between the fiduciary’s conduct and the beneficiaiy’s *202 actual injury.” Id. at 256. When a plaintiff “knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer’s conduct, the statute of limitations starts to run.” Williams v. Ely, 423 Mass. 467, 467 (1996). Once a cause of action accrues, a beneficiary is required to file a claim within three years, or the claim is time-barred. G.L.c. 260, §2A; Cram v. Cram, 262 Mass. 509, 512 (1928).
Here, Kuiy knew of the Trust and was often told by his aunt that he would be well provided for upon her death. Shortly after Ban’s death in 1988, Kury attempted to find out what his rights were under the Trust and was told by Calechman that his aunt’s money was “none of his concern.” Given Kury’s understanding of the Trust and his understanding that Ban was to provide for him upon her death, the triggering event for the statute of limitations is the 1988 meeting between Kury and Calechman. That is the point in time in which Calechman repudiated the Trust and Kury should have realized he was being harmed by Calechman’s actions. Once Kury was told by Calech-man that he was due nothing, in light of what he knew about the Trust, Kury was required to act reasonably to ascertain whether, as a beneficiary, he had been harmed by Calechman’s conduct. Because Kury failed to act in the three years after his visit with Calechman, the applicable statute of limitations bars his breach of fiduciary duty claim.

ORDER

For the foregoing reasons, the defendant’s motion to dismiss under Mass.R.Civ.P. 12(b)(6) is ALLOWED.

The current trustees of the Charles Kury Trust are Stephen Gallant and Mark Elfman.

It is unclear when Teyssedon ceased serving as Trustee of the Charles Kury trust.

Calechman alleges that the stock transfer was completed so the restaurant’s losses could be offset on Rev-Kuiy’s tax returns.

Calechman used the term “related parties” in an affidavit that is not directly related to this case. In the affidavit, Calechman stated that he was the “lawyer overseeing the legal affairs of Cafe Budapest, Inc., Edith Ban, the Charles Kury Trust, and related parties.” Affidavit of Calechman ¶2. Kury argues that Calechman was referring to the beneficiaries when he used the term “related parties.”