Fremont-Smith, Thayer, J.
In this case, Unger (a professor at Boston University) has sued Lambert, an attorney who practices law in the areas of real estate and business, seeking to recover approximately $230,000 which he had transferred to her and contends was a loan that she agreed to repay in whole with interest. She contends that much of the loan has been repaid and that the balance had been transferred to her by Unger for the purpose of investment in real estate developments for their mutual benefit. After a trial, the jury found that $55,000 of Unger’s funds had been transferred to her for investment purposes, thereby reducing the loan balance still owed to him, to $170,488.16,[1] which, the jury also found, she had agreed to repay him at an annual interest rate of 8%. The jury also found that there was an attorney-client relationship between Lambert and Unger with respect to the funds he had transferred to her, and that, in acting as his attorney while at the same time doing business with him, Lambert had violated her ethical duly under the Professional Canons of Ethics in regard to the transferred funds and the proposed use of such funds. The juiy also found that Unger had suffered “zero” damages as a result thereof (presumably considering that an award of damages on this count would be duplicitous with its award of damages, $170,488.16, on the breach of contract count).
The jury also answered “yes” to the special question whether defendant had made misrepresentations of material fact to Unger with respect to the transferred funds and indicated he was damaged thereby in the amount of “all of plaintiffs legal fees contingent upon completion of this case, Superior Court Civil Action No. 01-3226.”[2]
The count for violation of G.L.c. 93A was reserved to itself by the Court, and arguments of counsel were heard on this count and on plaintiffs motion for an award of attorney fees, interest and costs, on March 1, 2007.
The Court’s findings and rulings on the c. 93A count are as follows:[3]

I. Violation of G.L.c. 93A

The Court concurs with the jury finding that Lambert dealt with Unger as his attorney in regard to her dealings with his money, see Fanaras Interprizes, Inc. v. Doane, 423 Mass. 121 (1996), and also finds, as did the juiy, that Lambert made material misrepresentations to Unger with respect to the transferred funds.[4] These false promises effectively played him along and induced him to transmit additional funds on frequent occasions to defendant, under false pretenses. The Court finds that these misrepresentations, as well as her breach of fiduciary duty (by failing to adhere to the Canons of Professional Ethics regarding the obligations of an attorney who does business with a client), constituted willful and knowing violations of G.L.c. 93A, which entitle Unger to double damages.
Defendant urges that the Unger-Lambert relationship here should be viewed as outside the ambit of c. 93A because they were engaged in a private partnership relationship, rather than in “trade or business.” Newton v. Moffie, 13 Mass.App.Ct. 462, 469 (1982); *236 Szalla v. Locke, 421 Mass. 448, 451 (1995). No partnership documents between Unger and Lambert, however, were ever executed and the Court finds that they were not partners, as were the parties in Moffie. Unlike the situation in Szalla, supra, moreover, the misrepresentations were made not only with respect to any prospective partnership or joint venture, but also with respect to the unpaid balance of the loan. Even with respect to the $55,000 which the jury found was given to defendant to be invested, no credible evidence of a partnership or joint venture was ever forthcoming. See: Bio-Vita, Ltd v. Rausch, 759 F.Sup. 33, 36 (D.Mass. 1991) (c. 93A applicable to misrepresentations made by one co-venturer to another during negotiations of an agreement).
Defendant further urges that there was no c. 93A violation because the juiy found that Unger suffered no harm from defendant’s breach of fiduciary duty or from her misrepresentations. Aspinal v. Phillip Morris Co., Inc., 442 Mass. 381, 401 (2004). At noted above, however, the jury specifically found that Unger did suffer injury from Lambert’s misrepresentations, i.e., his attorney fees incurred in this action, a finding with which the Court concurs.

II.Amount of c. 93A Damages

Although the jury was unable to quantify the amount of Unger’s damages from Lambert’s misrepresentations it did find that he was damaged thereby in the amount of his attorney fees in obtaining recovery on the contract counts of the complaint, obviously concluding that these attorney fees would not have been incurred had Lambert repaid the loans and provided securiiy for the unpaid balance as she repeatedly represented.
Unger’s legal fees pursuant to his contingent fee arrangement are 40% of the gross recovery, i.e., 40% of the jury award plus interest. The parties agreed at the March 1, 2007 hearing that interest to the date of the jury finding amounted to $130,409.11. When this is added to the verdict of $170,488.16, Unger’s total non-c. 93A recovery is $300,897.27. Forty percent of this gross recovery is $120,358.90, which are his legal fees. Legal fees may be awarded to a plaintiff as 93A damages when, as here, they were incurred other than just to vindicate the merits of a 93A claim. As stated in Siegel v. Berkshire Life Ins. Co., 64 Mass.App.Ct. 698, 703 (2005), “If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person’s rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property.” As the jury found that Unger was damaged in such amount by Lambert’s misrepresentations and I find that the misrepresentations were wilful and knowing, I award $120,358.90 as c. 93A damages, which I double to $240,717.80. See: R.W. Granger & Sons v. J&S Insulation, Inc., 435 Mass. 66, 84 (2001) (the portion of a c. 93A award representing attorney fees is subject to multiplication).
As the Court awards damages consisting of twice plaintiffs attorney fees, the Court believes that a separate award of attorney fees for the c. 93A count would be duplicative in these circumstances. As no distinct c. 93A attorney fees are awarded, the questions of whether they should be reduced by the time spent by legal counsel before the c. 93A count was added to the complaint in 2004, see Tarpey v. Crescent Ridge Diary, Inc., 47 Mass.App.Ct. 380 (1999), or should be reduced for the time period after plaintiff s rejection of defendant’s offer in response to plaintiffs demand letter, see Patry v. Harmony Homes, Inc., 10 Mass.App.Ct. 1 (1980), are not relevant considerations.

III.The $55,000 Provided to Lambert for Purposes of Investment.

The Court adopts the jury’s conclusion that $55,000 was provided to Lambert for investment purposes, thereby reducing the loan balance owed to Unger. Unger urges the Court to impose a constructive trust on this amount. The Court denies this request, but does rule that Unger is entitled to have an accounting as to how this money was invested and what, if any, return he is entitled to on such investments.

IV.Costs

Plaintiff has itemized $26,256.83 in costs. Judges are invested with discretion as to the amount of the award. Maillet v. Davidson Co., Inc., 407 Mass. 185, 194 (1990). In consideration of the amounts requested for each item, and the objections of the defendant’s counsel at oral argument to the amount of specific items, the Court concludes that an award of costs in the sum of $25,000 is appropriate.

ORDER FOR JUDGMENT

Accordingly, the Court ORDERS that final judgment shall enter for Unger in the total sum of $541,615.07[5] and costs of $25,000.
Defendant shall, within 30 days, provide plaintiff with a detailed accounting in regard to the whereabouts profits of the $55,000 of plaintiffs money provided to defendant for the purpose of investment and as to any financial return on such investments.

An additional $5,000 had been repaid. Lambert contended that she also repaid Unger an additional $186,000 by transferring him stock in Di/Mac Corporation. The Court concurs with the jury’s rejection of this contention.

The jury found that Unger was harmed by Lambert’s misrepresentations in the amount of his legal fees, but, as no evidence was before the jury which would have permitted them to quantify Unger’s legal fees, no dollar amount of damages was found.

he parties’ requests for findings and rulings as to the c. 93A count are allowed to the extent that they are consistent with the Court’s findings and rulings below, and are otherwise denied.

These included false assurances at various times to repay the loan balance and, on at least one occasion, to promptly *237 provide him with a note and mortgage to secure the unpaid loan balance. The misrepresentations were thus made not only with respect to funds to be invested, but also with respect to her repayment of and providing security for the unpaid balance of the loan.

Consisting of the total of (1) the $170,488.16jury award, (2) the $130,409.11 interest on the jury award to the date of the award, and (3) the $240,717.80 c. 93A damage award.