The plaintiff, Jack Clemente, appeals from a Superior Court summary judgment in favor of the defendants, Gary E. Martinelli and Martinelli Discenza PC (collectively, Martinelli), on all counts of his complaint. The sole issue we consider on appeal is whether the judge was correct in concluding that there was no attorney-client relationship between the plaintiff and Martinelli, as all three counts of the plaintiff's complaint depend upon the existence of such a relationship. We affirm.
The facts of this case are undisputed. Gary E. Martinelli is an attorney practicing law in the town of Longmeadow. In 2004, Martinelli assisted the plaintiff in forming a business, Convenient Cards, LLC (CC), and provided CC with various legal services. Martinelli billed CC directly for his work. In 2007, the plaintiff and Martinelli began negotiating a partnership within CC. Martinelli sent the plaintiff a letter advising him that a business partnership between them would create a conflict of interest for him, and that the plaintiff should seek the advice of another lawyer.[3] Martinelli eventually became a partner in CC and continued to provide CC legal services.
Several years later, in 2009, CC's struggling financial situation necessitated a merger with another company. Martinelli conducted a majority of the merger negotiations on CC's behalf. The final merger agreement, in relevant part, provided that the plaintiff would remain a salaried employee of the new business. The plaintiff's position has since been terminated, although he remains a shareholder and continues to act as a director for the business.
The plaintiff later filed a three-count suit against Martinelli, claiming that in negotiating the merger, Martinelli, acting as the plaintiff's personal attorney, committed legal malpractice by failing to adequately represent his personal interests (count III).[4] Count II alleged that if Martinelli was not in fact the plaintiff's personal attorney, he fraudulently induced the plaintiff into believing that he was. In addition, count I claimed unfair and deceptive business practices in violation of G. L. c. 93A.
In a claim for legal malpractice, a plaintiff must first demonstrate the existence of an attorney-client relationship. Miller v. Mooney, 431 Mass. 57, 61 (2000). An attorney-client relationship can be either express or implied. See DeVaux v. American Home Assur. Co., 387 Mass. 814, 817-818 (1983). "An attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.... In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.' " Ibid. (quotation omitted). However, in circumstances " 'where an attorney is also under an independent and potentially conflicting duty to a client,' [the court is] less likely to impose a duty to nonclients." Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989) (Robertson ), quoting from Page v. Frazier, 388 Mass. 55, 63 (1983).
In this case, is it undisputed that there was no contract for services between the plaintiff and Martinelli, and thus no express attorney-client relationship existed. The plaintiff argues that an attorney-client relationship was implied, however, because Martinelli performed legal services for CC, and the plaintiff was CC's only employee. As the judge below determined, this belief betrays a fundamental misunderstanding of an incorporated business. See Robertson, supra at 522 (quotation omitted) ("An attorney for a corporation does not simply by virtue of that capacity become the attorney for ... its officers, directors[,] or shareholders"); Clair v. Clair, 464 Mass. 205, 216 (2013).
Here, Martinelli had sent the plaintiff a letter in which he specifically informed the plaintiff that he only represented CC. The letter also identified Martinelli's conflict of interest were he to become a partner in CC, and advised the plaintiff to seek outside advisement. Given these statements, any reliance that the plaintiff may have placed on Martinelli representing his personal interests was unwarranted. Therefore, the judge was correct in concluding that Martinelli owed no duty to the plaintiff, as no attorney-client relationship existed. Accordingly, summary judgment was correctly granted on count III.[5]
Since the judge was correct in determining that no attorney-client relationship existed, the grant of summary judgment on counts I and II of the plaintiff's complaint was also correct. On count II, the judge concluded that Martinelli did not fraudulently induce the plaintiff's reliance on him for personal legal advice, because he expressly told the plaintiff that he was acting as CC's attorney, that he was serving a dual role as a shareholder and attorney, and that the plaintiff should seek independent advice. As to count I, the judge ruled that absent an attorney-client relationship, Martinelli was acting as either the plaintiff's business partner or CC's corporate counsel during the merger, and as such the dispute was essentially an internal business dispute, which is not governed by c. 93A. See Zimmerman v. Bogoff, 402 Mass. 650, 662-663 (1988). We conclude likewise on both counts.
Judgment affirmed.

Specifically, the letter stated:
"In making this proposal, I have a 'conflict of interest.' In our dealings up until this time, I have only represented the interests of CC. In making this proposal, I am not only trying to help CC but am looking out for my own interest in making an intelligent investment decision. As a result, I have suggested that you seek the advice of others, be it CC's accountant, another lawyer[,] or a trusted advisor before you accept my proposal, and I understand you have done so."

Specifically, the plaintiff claims that Martinelli should have negotiated a cash payout for money the plaintiff personally invested in CC, a two-year guaranteed employment contract with the newly formed entity, and a severance package should the new company terminate the plaintiff.

The plaintiff relies on another part of Martinelli's letter, where he states, "I propose to help solve the remainder of this problem by assisting you as counsel in the capital-raising process" (emphasis added). From the context of the entire letter, however, it is apparent that Martinelli is referring to assisting CC, not the plaintiff personally. In the very next sentence, Martinelli states that he "would not expect to be paid until CC raised additional cash." In addition, the following paragraph states that in consideration of his extending credit for legal services performed, CC should grant him the option of buying additional units in CC. Since Martinelli had always billed CC for his services, it is clear that he was stating his willingness to continue working for CC on credit until its cash-flow issues were resolved. Finally, in the letter Martinelli expressly states (in the passage quoted in full in note 2, supra ) that he has been working solely for CC.