W. Oliver Tripp Company *vs.* American Hoechst Corporation.

No. 91-P-953.

Norfolk. December 17, 1992. - July 14, 1993.

Present: Kass, Jacobs, & Greenberg, JJ.

*Contract*, Performance and breach. *Consumer Protection Act*, Unfair act or practice, Jury trial. *Unlawful Interference. Practice, Civil*, New trial, Jury trial. *Collateral Estoppel. Constitutional Law*, Trial by jury.

In a civil action, the judge's allowance of a motion for new trial was supported by the record and was not an abuse of discretion. [747-750]

In a civil action the judge's findings and conclusions on the plaintiff's claims under G. L. c. 93A in favor of the defendant were supported by the record and not otherwise erroneous. [750-751]

Where the record of a civil action described only conduct that amounted to lawful competition, the judge's direction of a verdict for the defendant on a count of tortious interference with contractual relations was correct. [751-753]

In a civil action in which the judge ruled in favor of the defendant on the plaintiff's claims under G. L. c. 93A and granted a new trial to the defendant on the breach of contract claim that had been decided by a jury in the plaintiff's favor, it was error for another judge to enter summary judgment for the defendant on the contract claim on the basis of the trial judge's findings of fact on the c. 93A claims, where the plaintiff would thereby be deprived of its constitutional right to a jury trial. [753-754]

CIVIL ACTION commenced in the Superior Court Department on January 21, 1986.

The case was tried before *Andrew G. Meyer*, J. After a motion for a new trial on the breach of contract claim was allowed by *Meyer*, J., a motion for summary judgment on that claim was heard by *Roger J. Donahue*, J.

*Floyd H. Anderson* for the plaintiff.

*Thomas J. Dougherty* (*Edmund C. Kenealy* with him) for the defendant.

KASS, J. W. Oliver Tripp Company ("Trippco") did not receive submissively the news in late December, 1985, of American Hoechst Company's cancellation of a dealership agreement between Hoechst's Enco Printing Products division ("Enco") and Trippco. Within a month, Trippco brought an action against Enco seeking injunctive relief, damages for breach of contract, tortious interference with contractual relations, violations of the Massachusetts antitrust act (G. L. c. 93, §§ 4-6), and damages for unfair and deceptive practices under G. L. c. 93A, §§ 2 and 11.

At trial, a judge of the Superior Court reserved to himself the c. 93A claims. Upon the request of Enco, other claims were tried to a jury. After the plaintiff's evidence was in, the judge directed verdicts for the defendant on the antitrust and tortious interference claims. The jury returned a verdict of $500,000 for the plaintiff on the breach of contract claim. As to the c. 93A claims, the judge ruled that Enco had not committed a breach of the dealership agreement; to the contrary, Trippco had violated the agreement and thoroughly deserved to be discharged. The judge denied a defense motion for judgment notwithstanding the verdict but granted a motion for a new trial. Before the case came up for retrial, the defendant moved for summary judgment on the ground that the trial judge's findings of fact under the c. 93A portion of the case worked a collateral estoppel against the plaintiff that barred it from bringing the contract claim to a new trial. A Superior Court judge other than the trial judge allowed the motion for summary judgment. From that judgment Trippco has appealed, bringing up as claims of error (1) the allowance of the motion for a new trial, (2) the directed verdict on the tortious interference claim (Trippco has not pressed the antitrust claim on appeal), (3) the judge's decision of the c. 93A claims, and (4) the grant of summary judgment.[1] We affirm the allowance of the motion for the new trial, the directed verdict, and the c. 93A decision. We

---

[1] Final judgments on the various counts were not entered until the motion for summary judgment on the contract claim was decided. The plaintiff then filed a timely notice of appeal from the final judgments.

reverse the summary judgment barring a new trial on grounds of collateral estoppel.

These, in summary, are the facts. Trippco is a "full service" graphic arts products distributor, operating out of Braintree, that sells to printing businesses throughout New England. In addition to the line of products made by the defendant Enco, which it had carried since 1967, Trippco also sold equipment and supplies for competing manufacturers, including Kodak, DuPont, and 3M. Enco, headquartered in Somerville, New Jersey, sells its products, such as photographic plates, processors, and developing chemicals, through a nationwide network of nonexclusive dealers, who in turn sell to end users, e.g., printers, as well as to retailers.

Beginning in 1982, Enco and Trippco entered into annual written dealership agreements defining their reciprocal obligations and, to a certain extent, obligations owed to ultimate customers. Those agreements contained minimum requirements for the purchase by Trippco of specified Enco products and provided for cancellation by Enco on thirty days' notice if Trippco failed to meet its obligations under the contract. On January 16, 1985, Enco and Trippco signed a new dealership agreement, this time for a three-year term. In addition to several minimum purchase requirements, the 1985 contract required Trippco, as dealer, to develop markets for Enco products and to use its best efforts in promoting the Enco line. To that end, Trippco personnel were to participate in workshops, seminars, and training programs sponsored by Enco to promote its products.

Rather than promoting its line, Enco thought Trippco was sabotaging it. That and a precipitous decline of Trippco's sales of Enco products (down 22%) provoked the cancellation notice by Enco dated December 23, 1985. Trippco would have us understand Christmas was no holiday. Hard feelings between Enco and Trippco had their origins in 1984, when Trippco inked an agreement with Sage Technology, Inc. ("Sage"), to be the exclusive dealer for Sage graphic arts chemicals in New England. Sage produced a developer spe-

cifically designed for use with Enco printing plates[2] that gave off an inoffensive smell. In this regard it had an edge on Enco's developer, which, although effective in processing printing plates, was seriously malodorous. Indeed, users attributed headaches, nausea, blurry vision, and skin irritation to the exhalations of the Enco developer.

Enco's smell problem provided a basis for Trippco's touting the merits of the Sage chemicals, to the obvious displeasure of Enco. So much for cooperation in promotional efforts on behalf of the Enco line. Enco retaliated with warnings that the Sage chemicals would fail to develop Enco plates properly and would gum up the works of Enco processors. Trippco assigns as a further cause of the souring of the relationship with Enco the taking on, as an exclusive dealer, of a line of printing plates made by Hawson-Algraphy, a competitor of Enco. For its part, Enco identifies, as the prime cause of the severance of the Trippco dealership, not so much irritation about Trippco's pushing competitive products but rather Trippco's deliberate unwillingness to promote Enco products and the sharp decline in sales of Enco products by Trippco.

1. *Allowance of the motion for a new trial.* Although the allowance of a motion for a new trial is not beyond review, see, e.g., *Evans* v. *Multicon Constr. Corp.*, 6 Mass. App. Ct. 291, 293-297 (1978), the occasions on which appellate courts have thought to have been abused the broad discretion of a trial judge on such a motion are extremely rare; like snow storms in mid-May, such occasions may occur, but they induce considerable astonishment when they do. See *Hartmann*

---

[2]The equipment and chemistry involved in this litigation are used in the four-color offset printing process. In that process, the image to be printed is recorded on four separate pieces of film, one each for four different colors. The four negatives are then used to expose each of four separate printing plates with the image to be printed. After being exposed, the plates are developed or processed with a chemical developer either by hand or in a machine known as a plate processor. The developed plates are then placed in a printing press where the image is transferred onto paper in four successive stages, one for each plate with its respective color of ink. The plates are used by printers to run upwards of hundreds of thousands of reproductions of the original image.

v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 61 (1948).
The standard that a trial judge is to apply on a motion for a
new trial in a civil case is whether the verdict is so markedly
against the weight of the evidence as to suggest that the ju-
rors allowed themselves to be misled, were swept away by
bias or prejudice, or for a combination of reasons, including
misunderstanding of applicable law, failed to come to a rea-
sonable conclusion. *Scannell* v. *Boston Elev. Ry.*, 208 Mass.
513, 514-515 (1911). *Hartmann* v. *Boston Herald-Traveler
Corp.*, 323 Mass. at 60. *Robertson* v. *Gaston Snow & Ely
Bartlett*, 404 Mass. 515, 520, cert. denied, 493 U.S. 894
(1989). The decision to grant or deny a motion for a new
trial rests in the discretion of the trial judge, and an appel-
late court will not vacate such an order unless the judge has
abused that discretion. *Id.* at 520-521. By abuse of discre-
tion, courts in this context mean the failure to avoid idiosyn-
cratic choice brought on by arbitrary determination, capri-
cious disposition, or whimsical thinking. *Davis* v. *Boston
Elev. Ry.*, 235 Mass. 482, 496 (1920). *Berube* v. *McKesson
Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433 (1979). *In-
ternational Totalizing Sys., Inc.* v. *PepsiCo., Inc.*, 29 Mass.
App. Ct. 424, 438 (1990).

Measured against these standards, the allowance of a mo-
tion for a new trial by the trial judge in this case is unassail-
able. To begin with, the judge explained his reasons for
granting a motion for a new trial on the contract count in a
careful memorandum. The judge recounted evidence he
thought decisive and *uncontroverted* about the drop in
Trippco's sales of Enco products, the refusal of Trippco to
boost Enco sales, the stonewalling of Trippco's president,
Gerry L. Tripp, about minimum sales figures, and the hostile
words and acts by Tripp in regard to Enco, which amounted
to a breach of the cooperation and promotion obligations of
the dealer under the contract. The judge also expressed his
view that there was no evidence whatever to support the
$500,000 in damages found by the jury. That which is rea-
soned and explained is not a likely candidate for categoriza-
tion as arbitrary, capricious, whimsical, or idiosyncratic un-

less, upon inspection, it is simply divorced from the reality of the record.

Such is not the case. A sampling of eleven volumes of transcript discloses substantial support for the judge's decision on the new trial motion. There was evidence that following Enco's cancellation Trippco's gross sales and net profits showed an over-all increase, thus casting considerable aura of mystery about where the jury's $500,000 in damages from termination of the contract came from. It was undisputed that prior to Enco's notice of termination to Trippco, the distributor's sales of Enco product had declined 22%. Gerry Tripp conceded there were conflicts between his company and Enco, that he did not want to go along with Enco's discounting policies, that he regarded Enco chemistry products as low profit items, that his company was making efforts to convert customers to Sage chemistry products in preference over Enco products, that he had expressed to Enco his anger about Enco's efforts to boost its own product line — and to disparage the Sage line — with end use customers, and that, as he had an exclusive dealership with Sage (as opposed to the nonexclusive one with Enco), it was profitable for him to push Sage products. There was evidence that Tripp, on behalf of himself and his company, contemptuously brushed off efforts by Enco to hold seminars and sales meetings with Trippco to promote Enco products. The record is full of testimony and documents from which the inference is almost compelled that Trippco and Enco had a severe falling out which caused them to work at cross purposes. It is one thing for a business corporation to tolerate competition and another to nourish a viper in its bosom. The record provides ample basis for the judge rationally to have concluded that Trippco had become just such a viper or, more prosaically, that Trippco had defaulted on its obligations to meet purchase quotas and to cooperate with Enco in efforts to reverse the sharply declining curve of Trippco's sales of Enco products.

As the judge's decision to allow the new trial motion may be affirmed on the basis of the state of the evidence, it is not

necessary for us to consider whether the judge was correct in his determination that the opening statement and closing argument by Trippco's counsel unfairly painted the dispute a David persecuted by an industrial Goliath.

The allowance of the motion for a new trial on the contract count may stand.

2. *The correctness of the judge's findings and rulings on the c. 93A count.* In many respects, Trippco's claim of error about the trial judge's findings under the c. 93A count resembles its position concerning the grant of the motion for a new trial; i.e., Trippco insists the judge is clearly wrong and that his error flows from selective memory of the evidence and a general hostility towards the plaintiff. Our review of the lengthy record does not bear out the persistent suggestion by Trippco that the judge developed an animus against Trippco's counsel and by derivation against Trippco. Symptoms of judicial hostility such as cutting off lines of inquiry, acerbic comments, or hectoring of counsel are entirely absent. To be sure, in his memorandum on the motion for a new trial, the judge described as rather free handed and incendiary the opening and closing of Trippco's counsel, but that expressed a view of the case in light of the evidence as the judge heard it and saw it. That his view differed from that of the plaintiff does not imply hostility.

In his findings, the judge summarized the accelerating enmity in 1985 between Trippco and Enco. He found that Tripp told a regional sales manager of Enco that Enco products were low profit items and that Trippco was not interested in promoting them. Enco was told by Tripp and other employees of Trippco that meetings to promote sales of Enco products and to detoxify the atmosphere that had developed between personnel of the two companies[3] would be a waste of time. The judge wrote:

---

[3] Tripp had threatened "to get the ass" of Timothy Morgan, an Enco technical representative who had disparaged the Sage chemicals Trippco was pressing on users of Enco plates and processors.

"Most assuredly [Trippco] did not comply with [its] dealership obligations and formal termination on December 23, 1985 of the contract by Enco . . ., was merely a written confirmation of what had already transpired. Tripp[co] breached the contract first, intentionally and in bad faith. Enco was then entitled to formalize the de facto situation."

On review these findings are, of course, to be accepted unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge's choice is not clearly erroneous. *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203 (1986). In our discussion of the motion for a new trial we have pointed to evidence which warranted the judge's view of the case. We think his findings and conclusions are supported and should not be disturbed.

3. *Wrongful interference with contractual relations.* As to Trippco's complaint of tortious interference with contractual relations, it will be recalled that the judge directed a verdict for the defendant. We must inquire whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury could reasonably return a verdict in favor of the plaintiff, i.e., whether from the evidence it was possible to draw enough reasonable inferences to make out the elements of the plaintiff's case. *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982). *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 89-90 (1987). *International Totalizing Sys., Inc.* v. *Pepsico, Inc.*, 29 Mass. App. Ct. at 429.

Plaintiffs who toss a count of tortious interference with contractual relations into the complaint hopper frequently do not pause to consider that aspect of the tort which requires that the interference complained of be improper. See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 812-816 (1990). Restatement (Second) of Torts §§ 766, 767 (1977). It was insufficient for Trippco to show merely that (1) it had

business relationships with third parties, (2) about which Enco knew, (3) and with which Enco intentionally interfered, and (4) that it suffered damage in consequence of the interference. Trippco needed to offer evidence that the third factor in establishing the tort, intentional interference, was induced by an improper motive or executed by improper means. *Ibid.* See also *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506, 509 (1980); *United Truck Leasing Corp.* v. *Geltman*, 26 Mass. App. Ct. 847, 852 (1989), *S.C.*, 406 Mass. 811 (1990).

Of seven factors which the Restatement (Second) of Torts § 767 sets out to be considered in determining whether an actor's conduct is improper or not, two are particularly pertinent: § 767(d), "the interests sought to be advanced by the actor" and § 767(e), "the social interests in protecting the freedom of action of the actor and the contractual interests of the other." The interference of which Trippco complains is that Enco attempted — quite unsuccessfully one gathers from the record — to persuade end users to ditch Sage chemicals and use Enco chemicals instead. In doing so, Enco acted to promote sales of its product line and discourage sales of a competitor's product line. Those are altogether normal business objectives, and one supposes there is a societal consensus that persons should be free to act competitively. Of course competitive conduct must be within lawful bounds. Fraudulent misrepresentations or violation of antitrust laws, for example, would be impermissible. Although there was, in this case, a robust difference of opinion between Trippco and Enco about the technical justification for Enco's disparaging the Sage products in comparison to its own, that sort of puffery combined with reverse puffery would seldom amount to fraudulent misrepresentation. Certainly it did not in this case. There is no evidence that Enco's technical representatives had reason to doubt the merits of the technical arguments they were making about processing chemicals or that anyone relied on Enco's statements about processing chemicals to the detriment of Trippco. Enco, so far as the record shows, did not limit the sale of other Enco products (plates

and processors) to customers who were not using Enco chemicals. Indeed, the Restatement (Second) of Torts § 768 expressly recognizes, as lawful, competitive conduct that does not employ unlawful means and does not create or continue an unlawful restraint of trade. For the reason, if no other, that the record describes only conduct of the kind we have described as lawful competition, the judge's direction of a verdict on the tortious interference count was correct.

4. *Summary judgment barring retrial of contract claim.* In allowing a motion for summary judgment by the defendant on the contract claim, *after* the trial judge had allowed the motion for a new trial on that claim but *before* it was retried, the judge who heard the motion reasoned that the breach of contract issue had been precluded by the judgment of the trial judge on the c. 93A count that Trippco had failed to perform its contractual obligations and that, therefore, Enco was entitled to cancel the balance of the dealership agreement.

When a complaint contains a count as to which a party may claim a jury (e.g., a common law action) accompanied by a parallel count under c. 93A, based on substantially the same facts, the trial judge has the choice of (1) letting the jury find the facts on both claims, (2) deciding himself all aspects of the c. 93A claim, or (3) asking the jury for nonbinding advisory findings as to the c. 93A matter. *Acushnet Fed. Credit Union* v. *Roderick*, 26 Mass. App. Ct. 604, 606 (1988). *Chamberlayne School* v. *Banker*, 30 Mass. App. Ct. 346, 354 (1991). The trial judge exercised the second choice, i.e., he reserved to himself all aspects of the claim under c. 93A. It was in the course of discharging that responsibility that the judge decided that Trippco, rather than Enco, had ceased performing basic provisions of the dealership contract. He took account of the contrary verdict returned by the jury, by which he was not bound. The jury, he was convinced, "were dead wrong."

Nevertheless the trial judge denied a motion for judgment notwithstanding the verdict. See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). That was not inconsistent with the judge's

disdain for the jury verdict. It was one thing for the judge to have been unimpressed by the plaintiff's evidence, to have decided that the jury had plucked damages from the air, and to have concluded that the jury had been swept away by invitations to speculate; it was another to say that there was no evidence upon which a rational trier of fact, making all inferences in favor of the plaintiff, could not have found for the plaintiff on the contract claim.

On the basis of *Nei* v. *Burley*, 388 Mass. 307, 315 (1983) (no right to a jury trial on a c. 93A claim), *Acushnet Fed. Credit Union*, 26 Mass. App. Ct. at 606, and *Chamberlayne School*, 30 Mass. App. Ct. at 354-355, the common law contract claim and c. 93A claim came before disparate tribunals so far as facts were concerned, albeit tried simultaneously in the interest of judicial economy and, one may say, also in the interests of legal services economy for the warring parties. The trial judge could have decided the c. 93A claim as he did and have left undisturbed the jury verdict in the contract count. It is, therefore, anomalous to decide, as the second Superior Court judge did, that the judge's c. 93A findings govern a subsequent trial of the contract count, especially when the trial judge had ruled that the defendant was entitled to a new trial on the contract count.

Besides, barring the jury (contract) claim by application of the simultaneously tried, but legally distinct, nonjury (c. 93A) claim would provoke discomfiting issues of deprivation to right to trial by jury. See *Beacon Theatres, Inc.* v. *Westover*, 359 U.S. 500, 511 (1959), in which the Court prohibited a trial judge, absent extraordinary circumstances, from depriving a party of the constitutional right to a jury trial by first ruling on an equitable claim and then barring the legal claim through application of the doctrine of issue preclusion. See also *Wallace Motor Sales, Inc.* v. *American Motor Sales Corp.*, 780 F.2d 1049, 1065-1066 (1st Cir. 1985). Particularly under art. 15 of the Massachusetts Declaration of Rights, in a common law case, the right of the parties to a trial by jury "shall be held sacred."

The judgment for the defendant on the c. 93A count is affirmed; the order directing a verdict for the defendant on the count of tortious interference with contractual relations is affirmed; the order allowing a motion for a new trial under the contract claim is affirmed; the judgment for the defendant entered upon allowance of the motion for summary judgment is reversed, and the contract claim shall stand for trial.

*So ordered.*