## JUDITH MEYER *vs.* AUGUSTUS F. WAGNER, JR.

No. 01-P-1123.

Barnstable. September 6, 2002. - March 4, 2003.

Present: GRASSO, COWIN, & GREEN, JJ.

*Negligence,* Attorney at law. *Attorney at Law,* Malpractice, Negligence. *Practice, Civil,* Judgment notwithstanding verdict, New trial.

On a motion for judgment notwithstanding the verdict in a civil action arising from the defendant's representation of the plaintiff in her divorce action, the judge improperly concluded that there was no rational basis for the verdict in favor of the plaintiff, where the jury was presented with evidence, albeit in conflict, that permitted a finding of negligence on the part of the defendant [499-504]; moreover, the judge erred in granting the defendant a new trial in the event that the judgment notwithstanding the verdict was overturned on appeal, where there was no evidence that the jury was confused or misled, or that they arrived irresponsibly at an eccentric decision [504-506].

CIVIL ACTION commenced in the Superior Court Department on July 24, 1992.

Following review by the Supreme Judicial Court, 429 Mass. 410 (1999), the case was tried before *Richard F. Connon,* J.

*George C. Deptula* for the plaintiff.

*James R. DeGiacomo* (*Judith K. Wyman* with him) for the defendant.

COWIN, J. The plaintiff, having been represented by the defendant attorney (among others) in connection with her divorce proceedings, sued the defendant on various theories for losses allegedly incurred by her as a result of that representation. A trial resulted in a jury verdict for the defendant on certain claims, directed verdicts for the defendant on other claims, and a finding by the judge in the defendant's favor on the plaintiff's

claim under G. L. c. 93A.[1] On appeal by the plaintiff, the Supreme Judicial Court transferred the case on its own initiative from the Appeals Court, affirmed the judgments entered on the directed verdicts and the G. L. c. 93A finding, and reversed the judgment entered on the jury verdict. See *Meyer* v. *Wagner,* 429 Mass. 410, 411, 425 (1999).

The surviving claims were retried, and the judge submitted two special questions, see Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), to the jury. In response, the jury answered that the defendant had not been negligent in the preparation or execution of the settlement agreement that resolved the plaintiff's divorce case, or in the advice that he provided in that action, but that the defendant had been negligent in failing adequately to secure the marital assets and that the plaintiff had incurred a loss of $750,000 as a result. On motion of the defendant, the judge, concluding that there was no evidence to support a finding that the defendant's negligence caused the plaintiff any loss, set aside the jury's verdict in favor of the plaintiff, and entered judgment notwithstanding the verdict for the defendant. See Mass.R.Civ.P. 50(b), as amended, 428 Mass. 1402 (1998). In the alternative, the judge allowed the defendant's motion for new trial, stating that the verdict was against the weight of the evidence and that denial of the motion "would be inconsistent with substantial justice."[2] See Mass.R.Civ.P. 50(b); Mass.R. Civ.P. 59(a), 365 Mass. 827 (1974).

The plaintiff has appealed, contending that the judge's actions on the two posttrial motions were erroneous. The plaintiff asserts also that the judge improperly excluded evidence pertaining to the values of certain assets controlled by the husband and that admission of such evidence could have persuaded the jury to return a verdict in favor of the plaintiff on the first issue (i.e., the alleged negligence of the defendant with respect to the separation agreement itself). However, the plaintiff has stated in her brief that she would be satisfied with reinstatement of the jury verdict. We reverse both the judgment notwithstanding the

---

[1] The jury also returned a verdict in the amount of $70,000 on the defendant's counterclaim for attorney's fees.

[2] The judge characterized this as a "contingent" ruling, intending it to apply only in the event that the judgment notwithstanding the verdict was reversed.

verdict and the order allowing a new trial. See Mass.R.Civ.P. 50(c)(1), as amended, 428 Mass. 1402 (1998). In light of these dispositions, we do not reach the evidentiary issues identified by the plaintiff.

1. *Relevant facts.* We sketch the undisputed facts sufficiently for an understanding of the case, supplementing them as necessary elsewhere in the opinion. For greater factual detail, see *Meyer* v. *Wagner*, 429 Mass. at 412-416. The plaintiff's husband was engaged in the business of real estate development and construction. He conducted his operations by means of interrelated companies, with assets and liabilities frequently intermingled. Other investors had interests in certain of the husband's business dealings. The plaintiff, by other counsel, commenced a divorce proceeding in November, 1987. In March, 1988, she retained the defendant to replace her previous attorney. During the pendency of the case, the husband regularly attempted to obstruct the proceedings, including wilfully violating court orders. In addition, following the initiation of the divorce case, it appears that he may have used "shell" corporations or "straws" for the purpose of holding title to various of his real estate interests. The plaintiff, on a number of occasions, explained to the defendant that her husband would use these devices to dissipate or conceal marital assets.

On July 27, 1989, several days after trial of the divorce case had commenced, the parties settled and executed a separation agreement that was incorporated in a judgment of divorce nisi. That portion of the separation agreement that is relevant to this appeal provided for a division of the marital estate whereby the plaintiff would receive $250,000 within 100 days of the execution of the agreement; an additional $100,000 within one year of that date (to be increased to $150,000 payable the following year in the event that payment was not timely made); and an additional $600,000 upon the earlier of the sale of certain vacant land owned by the husband on Blueberry Lane in Sandwich or on December 31, 1989. The agreement further provided for the prompt sale of the marital residence on Cranberry Lane in Sandwich, with the plaintiff permitted to continue to reside there until the property was sold. The husband also agreed to give to the plaintiff mortgages on the properties at Blueberry

Lane and Cranberry Lane, as well as on certain commercial property in Sandwich (the Village Realty Trust), said mortgages to secure payment of the amounts owed to the plaintiff as her share of the marital estate. It was agreed that those mortgages would be subject to existing mortgages on the properties in question. The existing mortgages included a $500,000 mortgage on the Cranberry Lane property; a mortgage of unspecified amount on the Blueberry Lane property; and a $600,000 blanket mortgage on the Cranberry Lane and Blueberry Lane properties.[3]

Despite the provision of the separation agreement that called for the giving of mortgages as security, the defendant did not obtain any mortgages from the husband at the time of the entry of judgment on July 27, 1989. There was testimony that the defendant thereafter arranged to meet the husband at the Barnstable Registry of Deeds to obtain his signature on, and to record, the mortgages, but the husband did not appear as scheduled. In any event, there were no immediate further attempts on the defendant's part to obtain the agreed-upon mortgages. Likewise, the defendant took no action pursuant to Mass.R.Dom.Rel.P. 70 (1975), or otherwise, to bring about the mortgage conveyances by other means.[4] In addition, the defendant made no attempt at that time to seek attachments or restraints with respect to any other property in which the husband had an interest.

The husband did not make a timely payment to the plaintiff of $250,000 within 100 days (by November 4, 1989) as he was required to do by the judgment incorporating the separation agreement. On November 3, 1989, he entered into a purchase and sale agreement providing for the sale of the marital residence on Cranberry Lane for a purchase price of $1,125,000. The purchaser agreed to release to the husband a cash deposit of $250,000 in return for a mortgage on both the marital residence and the vacant property at Blueberry Lane to secure repayment of the deposit in the event that the sale was not completed. Following the filing by the defendant of a complaint

---

[3]As indicated above, the jury found that the defendant had not been negligent in his representation of the plaintiff to this point.

[4]For example, rule 70 authorizes a judge to enter a judgment divesting a party of real or personal property, or to appoint another person to take the action in lieu of that party.

for contempt for the husband's failure to pay the $250,000 installment as required, the husband, on or about November 30, 1989, paid the amount in question.[5]

The husband then failed to make a timely payment of the $600,000 installment due December 31, 1989 (the Blueberry Lane property not having been sold by this time). The defendant filed another complaint for contempt and, on January 19, 1990, obtained attachments on the Cranberry Lane and Blueberry Lane properties to secure the amounts owed to the plaintiff. The attachment on Cranberry Lane, however, was subordinate to the purchaser's $250,000 mortgage and was, as will be seen, of limited value. See discussion *infra* at 502-504. Meanwhile, the plaintiff, aware that the Cranberry Lane residence was now under agreement, negotiated with the purchasers regarding sale to them of personal property belonging to her at that location and ultimately agreed to accept $75,000 from the purchasers for all of the furniture and electronics (as well as an additional $5,000 from the broker who promised to contribute that sum when the real estate sale closed).

The Cranberry Lane transaction sold for the agreed-upon price of $1,125,000 on January 26, 1990. The plaintiff released the attachment in her favor on the property so that the sale could be completed. Because the husband had already received a deposit of $250,000, $875,000 was paid at the closing. Of this, $500,000 was paid to the first mortgagee to remove its lien, and an additional $300,000 was paid to the holder of the blanket mortgage on the Cranberry Lane and Blueberry Lane properties to clear the portion of that lien that encumbered the Cranberry Lane real estate. Taxes and fees consumed most of the remainder (despite the fact that the broker did not receive his commission). The sum of $15,300 was placed in escrow and was eventually received by the plaintiff.

Subsequently, the husband purportedly entered into an agreement with other purchasers to sell the Blueberry Lane property for $450,000 and sought a dissolution of the attachment in favor of the plaintiff so that the transaction could be concluded.

[5]It is unclear whether the $250,000 was the deposit paid and released by the purchaser of the Cranberry Lane property, or was generated from other sources.

When the plaintiff opposed the lifting of the attachment, it was revealed that the sales price for the property was actually $700,000. In April, 1990, a Probate and Family Court judge concluded that the husband was in contempt of the divorce judgment for failure to pay the $600,000 due on or before December 31, 1989.[6] By the time the smoke cleared, the purchasers had backed out. On November 29, 1990, the defendant obtained attachments on all other real estate in the name of the husband or other entities controlled by him. The husband made no further efforts to sell the Blueberry Lane property, and on December 11, 1990, the holder of the first mortgage foreclosed, thus leaving the plaintiff with nothing from that source.

The plaintiff discharged the defendant in the spring of 1991. Neither the $600,000 amount already in arrears, nor the $150,000 amount due July 27, 1991 ($100,000 not having been paid by July 27, 1990), were ever paid. The husband filed for bankruptcy for himself and his corporations. He died on September 27, 1992. The plaintiff received the $15,300 sum in escrow at the time of the sale of the Cranberry Lane property, and another $50,000 to $60,000 as a result of the husband's bankruptcy proceeding.

2. *Judgment notwithstanding the verdict.* The trial judge granted judgment notwithstanding the verdict on the ground that, even if the defendant was negligent in failing to obtain security or otherwise moving to realize the plaintiff's expectation that she would receive another $750,000, there was insufficient evidence to justify a finding that that negligence caused the plaintiff's loss. Whether evidence is sufficient is a question of law. See *Brighetti* v. *Consolidated Rail Corp.*, 20 Mass. App. Ct. 192, 193 (1985). A verdict must be sustained if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor" of the plaintiff. *Service Publica-*

---

[6]The judge imposed a thirty-day jail sentence that was stayed by a single justice of this court pending appeal. The Probate and Family Court judge's order was subsequently reversed because the judge had not conducted an additional evidentiary hearing on the husband's ability to pay. See *Meyer* v. *Meyer*, 30 Mass. App. Ct. 1108 (1991).

*tions, Inc.* v. *Goverman*, 396 Mass. 567, 571 (1986) (citations omitted). See *Poly* v. *Moylan*, 423 Mass. 141, 145 (1996), cert. denied, 519 U.S. 1114 (1997); *Brown* v. *Gerstein*, 17 Mass. App. Ct. 558, 560 (1984). In acting upon the question whether evidence is sufficient, the judge does not resolve conflicting evidence, and inferences therefrom, adversely to the prevailing party. See *Tosti* v. *Ayik*, 394 Mass. 482, 494 (1985); *Tovey* v. *Cambridge*, 274 Mass. 324, 326 (1931). The inquiry is not intended to invite the judge to substitute his view of the evidence for that arrived at by the jury. *Tosti* v. *Ayik, supra.* We apply the same standard as the judge, but do not defer to his view of the evidence. *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 659 (1996).

Here, the question is whether any negligence of the defendant brought about the loss to the plaintiff of $750,000, or any portion thereof, of her allocated share of the marital estate. The defendant does not assert that the evidence was insufficient to support the negligence determination, confining his contention to the proposition that the plaintiff's loss was not attributable to his negligence, but rather to factors over which he had no control. The judge agreed, concluding that the loss was caused by a decline in the real estate market rather than by the defendant's failure to obtain security at an earlier date or take other steps to compel an earlier sale.

The judge's conclusion in this regard not only was not compelled by the evidence, but also disregarded contrary evidence on which the jury could permissibly rely. There was expert testimony that, despite the general decline in real estate prices that took place during the period, waterfront property on Cape Cod had maintained much, if not all, of its previous value. Thus, one expert testified that the marital home on Cranberry Lane had a fair market value in January, 1990, of $1.8 million, while another expert opined that the fair market value of that property at that time was between $1.6 million and $1.8 million. That another appraisal valued the property at $1.2 million does not negate the right of the jury to rely on the evidence of higher value. If the Cranberry Lane property was worth $1.8 million in January, 1990, but sold for only $1.125 million, the jury could reasonably conclude that the plaintiff lost $675,000 in this single transaction.

The jury could also rationally find, in accordance with the testimony of other expert witnesses testifying on the subject of divorce litigation, that the defendant could have taken steps to bring about the sale of the Cranberry Lane property at what the jury permissibly found was its fair market value rather than at the substantially lower price at which it actually sold in January, 1990. There was testimony that this could have been accomplished in either of two ways. There could have been a timely effort to compel the husband to give the mortgages that he was obligated to provide pursuant to the divorce judgment (or, in lieu thereof, obtain immediate attachments on the properties). That would have eliminated, or certainly reduced, the possibility of a below-market sale, given that purchasers would be unwilling to acquire the properties encumbered by liens in favor of the plaintiff.[7] See discussion *supra* at 498; *infra* at 502-504. In the alternative, the defendant could have requested that the court divest the husband of the power to conduct the sales himself, instead placing the authority to do so in a fiduciary whose objective would be to maximize the value received. See note 4, *supra*. That this might be a desirable approach should have been apparent based on justified suspicions regarding the husband's motives, as well as on his failure to provide the required mortgages.

In ruling on the motion for judgment notwithstanding the verdict, the judge considered the options described above, and concluded that a finding that such steps would have produced a purchaser who would have paid a higher price was "speculation and conjecture based on possibilities rather than probabilities." See *McNamara* v. *Honeyman*, 406 Mass. 43, 46 (1989). This determination fails to do justice to the evidence. Expert witnesses testified that the fair market value of the Cranberry Lane property at January, 1990, was, as we have noted, as high as $1.8 million. Fair market value is that price likely to be arrived

---

[7]Normally, liens on real estate are satisfied by the seller from the proceeds received by the purchaser. The purchaser thus receives a clean title. If the purchase price is insufficient to satisfy the liens, the liens will not be released unless the seller applies sufficient funds from other sources, or unless the lienholders agree to release for lesser amounts.

at by a willing seller under no compulsion to sell[8] and an informed purchaser. By testifying that the fair market value of the marital home was in the range of $1.6 million to $1.8 million, the experts effectively testified that buyers were available who were willing and able to pay that amount. The jury could credit this testimony, then draw the reasonable inference that a good faith effort to market the property would have generated a sales price at or close to the fair market value. To the extent that there might still be a shortfall in what was owed to the plaintiff following a sale of the marital home at the fair market value, the jury could reasonably find that that shortfall could have been satisfied by the earlier obtaining of restraints on other property of the husband.

We address various theories asserted by the defendant to support his argument that the evidence does not warrant the jury's finding that his negligence brought about the plaintiff's loss. He argues that by a provision of the separation agreement, an agreement found by the jury not to have been a product of negligence on his part, the plaintiff released her interest in all of the husband's assets except for those properties to be mortgaged to secure her right to receive $1,000,000 as her allocated share of the marital estate. The implication that the defendant seeks to draw is that therefore no other properties could be used as security for what the plaintiff was owed. That conclusion is illogical. The plaintiff's release reflects only that she asserted no claim against the marital estate over and above the $1,000,000 to which the parties stipulated in the separation agreement. It does not preclude the use of other assets as security for that $1,000,000.

The defendant relies in addition on the fact that the plaintiff, having obtained an attachment on the Cranberry Lane property on January 19, 1990, released that attachment a week later so that the sale of the property at a price of $1.125 million could be completed. From this the defendant reasons that the plaintiff must have been satisfied with the transaction. The conclusion

---

[8]While the husband may have been under compulsion to sell because of the divorce judgment, it was not a compulsion to sell for less than fair market value. Indeed, the husband was implicitly obligated to attempt to sell for enough cash to satisfy the plaintiff's entitlement.

that the plaintiff was content with a sale of a principal asset of the marital estate that netted her virtually nothing is not compelling. The jury could permissibly have found that the execution by the husband of a $250,000 mortgage on the property had considerably narrowed the plaintiff's options. While the defendant attempts to minimize the significance of the mortgage securing the $250,000 advance by the purchaser because that mortgage was discharged at the closing, the fact is that that mortgage was senior to the plaintiff's attachment and thus took on considerable importance. It meant that any effort by the plaintiff to obstruct the $1.125 million sale of the Cranberry Lane property would have been likely to result in a foreclosure by the purchaser-mortgagee (that probably being the only way in which to recover his $250,000 advance). Such a foreclosure would have rendered the plaintiff's attachment of no value. Unless the plaintiff bid on the property herself, thereby risking her own funds, either the mortgagee or another bidder would have ended up with the property unencumbered by the plaintiff's attachment. Having been placed in this unfavorable position by the defendant's failure to obtain for her a security position with greater priority, the plaintiff cannot be faulted if she did not wish to compete for the property. It follows that her agreement to release the attachment was an agreement to release an interest that had little or no value in any event, and did not constitute the surrender of a realistic opportunity to preserve the value of the asset. She was entitled to let the transaction proceed in an effort to realize whatever net proceeds might come her way.[9]

Both the trial judge and the defendant emphasize the fact that, while approximately six months passed between entry of the judgment of divorce nisi and the obtaining of attachments on the Cranberry Lane and Blueberry Lane properties, no other liens were placed on those properties during that period except for the subsequently discharged $250,000 mortgage to the Cranberry Lane purchaser. They conclude therefrom that the

[9]Furthermore, on evidence that the defendant had represented to the Probate and Family Court judge that the plaintiff's rights were adequately secured, the jury could conclude that the plaintiff reasonably continued to rely on the assumption that she would ultimately realize her share out of other marital assets.

plaintiff incurred no loss as a result of the failure to secure the property earlier. For the reasons set forth above, that conclusion is unwarranted. The giving of the $250,000 mortgage altered the entire landscape. The jury could reasonably believe that, had the defendant obtained for the plaintiff at an earlier time the security to which she was entitled, the husband's manipulation of the purchase price would not have been possible, and the plaintiff would not have been damaged.

The jury was presented with evidence that was in conflict. While a finding that negligence on the defendant's part caused loss to the plaintiff was plainly not compelled, it was certainly permitted. It is for the jury to sort out conflicting inferences that are possible from conflicting evidence. It was error to conclude that there was no rational basis for the verdict.[10]

3. *Alternative grant of new trial.* Asserting that "it is clear that the jury misunderstood the applicable standard of negligence and or the law of real estate attachments and mortgages," the judge concluded that the verdict was against the weight of the evidence and contingently ordered a new trial. Whether to set aside a verdict because it is against the weight of the evidence is a question addressed to the discretion of the trial judge, and his decision will not be disturbed unless that discretion has been abused. *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, 520-521, cert. denied, 493 U.S. 894 (1989). The judge may set aside a verdict if he determines that the jury "failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law." *Hartmann* v. *Boston Herald-Traveler Corp.,* 323 Mass. 56, 60 (1948). "The standard that a trial judge is to apply on a motion for a new trial in a civil case is whether the verdict is so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law,

---

[10]The defendant argues that, even if the verdict is upheld, he should not be charged with $150,000 of the plaintiff's loss because that amount was not due to be paid by the husband until July 27, 1991, whereas the plaintiff terminated the defendant's services in the spring of that year. The date of the defendant's discharge is irrelevant. The jury could find that his negligence was responsible for a loss that occurred when he no longer represented the plaintiff.

failed to come to a reasonable conclusion." *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 748 (1993).

While we would ordinarily defer to the trial judge, who is in a better position to evaluate the trial proceedings, the conclusion that a jury verdict is against the weight of the evidence and the allowance of a new trial are not immune from review. Here, the judge concluded that juror confusion regarding the law of negligence and the law of real estate attachments and mortgages led to "an unreasonable conclusion" because "[t]he weight of the evidence points overwhelmingly to the fact that [the defendant's] breach of duty was not causally connected to [the plaintiff's] loss; unquestionably her loss resulted from the sharp decline in the real estate market."

As we have discussed above, the evidence that supported the judge's view of the case was neither "overwhelming" nor "unquestionable." There was evidence that the decline in the real estate market did not affect the properties in question, as well as evidence that the defendant's negligence was the cause of the plaintiff's inability to obtain her entitled share of the marital estate by means of the sale of those properties. The judge effectively substituted his own understanding of Cape Cod real estate market conditions at the relevant time for that of expert witnesses who had testified to the contrary, and then relied on his own view of the evidence to overcome both the contrary expert testimony and the jury's adoption thereof. Thus, his conclusion that the verdict was against the weight of the evidence was based entirely on a rejection of that evidence with no basis other than the judge's own disagreement with it. We do not find support in the record for the proposition that the jury was confused or misled, or that they arrived irresponsibly at an eccentric decision. It is the job of the jury, not the judge, to weigh conflicting evidence and to draw reasonable inferences, and they appear to have done so here. The judge should not decide the case as if sitting without a jury. *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. at 520. The judge, convinced that evidence that the defendant's negligence caused the plaintiff's loss was insufficient, was drawn inevitably to the conclusion that the jury's verdict was against the weight of the evidence. His ruling on the sufficiency of the evidence on this

issue was, as we have held, error; and we are convinced that that same fundamental error inspired the alternative, contingent ruling granting a new trial. Accordingly, that ruling must also be reversed.

4. *Disposition.* We note that the jury's verdict in the amount of $750,000 does not appear to give weight to certain amounts received by the plaintiff for which the defendant may be entitled to credit. These include the sum of $15,300 received by the plaintiff from an escrow account established in connection with the Cranberry Lane sale, as well as an amount estimated to be between $50,000 and $60,000 received by her as a result of the husband's bankruptcy proceedings. On remand, there should be a determination whether such amounts were in fact received and, if so, whether they should be credited against the $750,000 otherwise awarded.

The judgment is reversed and the jury verdict is reinstated subject to determinations on remand in accordance with this opinion. The contingent order granting a new trial is reversed.

*So ordered.*