Roach, Christine M., J.
This case arose from claims of medical negligence for wrongful death and other injuries inflicted by a long-term care facility and certain of its nursing employees as the result of a fall, hip fracture, and eventual death of Ruth Adkins. Plaintiff Administratrix originally claimed Defendants by their negligent care wrongfully caused the patient’s fall, her hip fracture, and her death. However, over the course of final pre-trial proceedings before the court during the period May 29 through June 4, 2008, the case narrowed considerably. Plaintiff voluntarily dismissed her wrongful death claim (Docket, at Paper 32),[1] and thereafter Defendants conceded liability for the fall, but continued to challenge proximate causation for the claimed injury.
The case as re-postured was tried to a jury on June 4 and 5, 2008, by the testimony of a single witness. Plaintiff Brenda Adkins testified about the course of her mother’s care and medical condition for the period from before the last admission to the Defendant facility immediately preceding the patient’s fall, through to her death seven weeks later. In particular Plaintiffs testimony and both sides’ advocacy focused on pain, that is, what if any pain the patient suffered as a proximate result of her hip fracture. Pain and suffering for the period of seven weeks was the sole category of damages tried. The jury’s verdict delivered on June 5, 2008 was in favor of Defendants, finding no damages for Plaintiff. Plaintiffs post-trial motions were filed pursuant to Rule 9A June 27, 2008.

Motion for New Trial

Plaintiff claims, pursuant to Mass.R.Civ.P. 59(a)(1), that the jury’s verdict was against the weight of the evidence. The grant or denial of such a motion lies *9 within the trial court’s discretion. Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). In ruling ajudge must necessarily consider the probative force of the evidence and not merely the presence or absence of any evidence upon a disputed point. However, ajudge may not decide the case as if sitting without a juiy, and may only consider the limited question of whether the jury failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law. Id., quoting Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (1948). For a civil case the standard is whether the verdict is “so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass.App.Ct. 744, 748 (1993), citing Scannellv. Boston Elevated Ry., 208 Mass. 513, 514-15 (1911) (judge should exercise discretion only when the verdict “is so greatly against the weight of the evidence as to induce in [her] mind the strong belief that it was not due to careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice”).
I find there is no reason to believe on this record the jury was “swept away,” or misapprehended the evidence. There is no reason on this record to conclude the jury’s decision was the product of bias, misapprehension or prejudice, or that the jurors failed properly to apply the law of proximate causation in negligence actions.
The juiy could reasonably have found the patient, Mrs. Adkins, to have been terminally ill and severely compromised by her chronic pulmonary obstructive disorder prior to sustaining the hip fracture. It was undisputed that, while she was transferred out of Defendant facility on February 3, 2001 in part to attend to her broken hip, she was also intubated and treated with other aggressive measures for her inability to breathe successfully and comfortably on her own — both well before, and after, the fall and the hip surgeiy. The medical records of her hospitalization from February 3, 2001, through her death on March 22, 2001 (which death the parties stipulated was due to various other medical conditions unrelated to her hip) reflect varied degrees of consciousness, varied administration of pain medication, and varied verbal or other responses by the patient to inquiries about the existence, severity, and location of any pain she experienced. The record includes notes from multiple days or portions of days throughout Mrs. Adkin’s hospital stay which made no reference to pain.
The juiy was faced with a relatively simple factual question: did they find Plaintiff proved, by a preponderance, sufficient evidence proximately linking the patient’s fall and resultant hip surgeiy to compensable pain and suffering by her?[2] The posture of the case required the juiy to separate the patient’s end-of-life suffering not attributable to her fall at the Defendant facility from any such suffering they found was attributable to that fall. Plaintiffs testimony about the time she spent with her mother, and her observations of the course of her mother’s medical condition was admitted, and the jury could have found it genuine. However, the juiy could also reasonably have found Plaintiffs testimony, in whole or in part, to be less reliable than the medical record itself with respect to compensable pain and suffering.[3] I find based on the entirety of evidence before the juiy that its verdict of no damages was reasonable, and not a miscarriage of justice. The juiy could well have concluded Mrs. Adkins’ other, unrelated, medical conditions were in fact the proximate cause of any distress she experienced during the hospitalization immediately preceding her death.
Plaintiff additionally argues that Defendants’ counsel’s closing argument — including multiple citations to the medical record, but also classic “pleading in the alternative” on the damages question — constituted a judicial admission requiring relief. The court does not so find. It is fundamental that anything counsel says in opening, throughout the trial, and most especially in closing, is not evidence for purposes of a jury’s deliberations. Thus Defendants’ closing could not change the evidence upon which this jury deliberated, or the facts it found.
To the extent Plaintiff is arguing the closing has some preclusive effect as a matter of law, the argument is unsupported by any authority offered by Plaintiff, or discovered by the court. The bulk of reported case law on so-called judicial admissions relates to proper treatment by the trial judge of statements made by the parties themselves prior to trial in the context of discoveiy. See, e.g. Reynolds Aluminum Building Products Co. v. Leonard, 395 Mass. 255, 259-62 (1985) (requests for admissions unanswered); Federico v. Ford Motor Co., 67 Mass.App.Ct. 454, 460-61 and note 8 (2006) (interrogatory responses); Houston v. Houston, 64 Mass.App.Ct. 529, 532-34 and note 7 (2005) (requests for admissions); Beupre v. Cliff Smith & Associates, 50 Mass.App.Ct. 480, 484 at note 8 (2000) (expert witness discoveiy). The only exceptions reflected in the cited authority to the familiar rule about openings and closings occur when: 1) an opening fails to establish a factual basis to state a claim as a matter of law (see, e.g., Beaumont v. Segal 362 Mass. 30, 32-33 (1972)); or 2) an attorney makes a statement of fact in the opening, and thereby admits a material fact that had otherwise been disputed in the case up until that time. Such a statement of fact may then be treated as a judicial admission. Sullivan v. Van Orman., 1999 WL1335162 (Mass. Superior) (Grabau, J.) (August 19, 1999).
*10 It does not follow that an alternative damages argument, made in closing, should have the same effect, and none of the cited authority supports this proposition. See Brodin & Aveiy, Handbook of Massachusetts Evidence (8th Edition, 2007), at Sections 2.2 and 2.5. The court thus declines to accept this argument as an alternative basis for new trial.

Motion for Additur

Similarly, a court should not alter a jury’s damage finding unless it appears a miscarriage of justice will result in the absence of such relief. Respect for the integrity of the jury system requires the court not to amend a verdict unless the sum is so disproportionate to the damages proved that a reasonable person would conclude the award resulted wholly or partly from the jurors’ passion, partiality, prejudice, corruption, or misunderstanding of the judge’s instructions. W. Oliver Tripp Co., 34 Mass.App.Ct. at 748. Additur is appropriate only when the trial judge concludes that the amount of the verdict is unreasonable, unless an unduly slim verdict signals the existence of other defects in the work of the jury, or mistakes by the judge. Freeman v. Wood, 379 Mass. 777, 785-86 (1980). See also, Hartley v. Phillips, 317 Mass. 35, 41-42 (1944) (fundamental test is motion “ought not to be granted unless on a survey of the whole case it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result”).
It was the jury’s exclusive responsibility to determine the credibility of the witness and the medical exhibits, as well as the weight to be accorded each. Every plaintiff electing to go to trial on such an issue takes the risk the jury will see the evidence differently from the way she does. “The fact that the jury could have found for [Plaintiff] does not make their verdict against the weight of the evidence or inconsistent with substantial justice.” Jamgochian v. Dierker, 425 Mass. 565, 571 (1997) (emphasis in original). I find this verdict was not so greatly against the weight of the evidence that it must be found, as a matter of law, to have been due to bias, misunderstanding or prejudice, rather than careful consideration of the evidence.

Conclusion

For all of the reasons contained herein, Plaintiffs Motion for New Trial, and Plaintiffs Motion for Additur are each DENIED, and final judgment shall enter for all Defendants.

A fourth individual defendant, Jane Lufkin, R.N., was also voluntarily dismissed.

The parties stipulated to the Jury Verdict Slip, and neither party objected in the Charge.

Plaintiff does not directly argue that the fact of non-elective hip surgery alone mandates a recovery. In this regard the jury had before it evidence that the surgery was delayed by many days, not by the nature of the fracture, but by the patient’s underlying unstable (but unrelated) medical conditions. The medical record also reflected the surgery was routine and without complication from a medical point of view, notwithstanding Plaintiffs testimony about the “hardware” involved.