NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-483

TAMMY L. TRESCH & another[1]

vs.

JUNE A. HANSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Tammy L. Tresch and Patrick Koczka, brought this negligence action to recover for injuries sustained in a motor vehicle collision caused by the defendant, June A. Hanson.  Following a trial in the Superior Court, the jury returned a verdict for the defendant.  The plaintiffs filed a motion for a new trial, which the trial judge allowed.  A jury returned a verdict for the plaintiffs at the second trial.  On appeal, the defendant argues that the judge abused his discretion in allowing the plaintiffs' motion because the verdict was not against the weight of the evidence, and that he improperly substituted his opinion for that of the jury.  We affirm.

---

[1] Patrick Koczka.

Background.  On August 29, 2014, the defendant rear-ended a vehicle driven by Tresch and in which Koczka was a rear-seat passenger.  Tresch's vehicle was stopped and waiting to take a left turn when it was struck.  During the collision, Tresch's "head went back and hit the headrest" and then her body "went forward."  Koczka, who had removed his seatbelt shortly before the collision, also hit his head.  Following impact, Tresch began complaining of numbness in her left side, neck pain, and shoulder pain.  Koczka sustained an "abrasion" on his left leg and a "contusion" on his head.  The plaintiffs were evaluated at the scene by paramedics, placed in cervical collars, and transported by ambulance to the hospital.

At the hospital, Tresch was evaluated and underwent CT scans, X-rays, and MRI scans.  A neurologic examination revealed that her motor strength was "not normal" and that she "continue[d] to show weakness" on her left side.  She was discharged with prescriptions for her pain.  In the weeks and months following the accident, Tresch experienced "sharp pain" in her neck and back, as well as shoulder discomfort and numbness in her left side.  She received physical therapy and various other treatments in her back and neck and underwent a "discectomy and fusion" for a herniated cervical disc in February 2015.  Thereafter, she continued to experience pain in her neck and lower back.

2

Koczka was also evaluated at the hospital after the accident.  Upon discharge, he was told that he was going to "feel sore in a couple days."  Between a "week to 10 days" later, he began experiencing neck pain accompanied by headaches, which felt like having a migraine "all the time."  He later received physical therapy and pain management treatments and had "recurring significant neck pain" until 2017.

The plaintiffs subsequently brought this negligence action against the defendant.  The defendant stipulated that she had breached her duty of care to the plaintiffs and caused the collision but denied that her breach caused the injuries they sustained and disputed the extent of their injuries.

The case was tried before a jury on August 31, 2022, and September 1, 2022.  The defendant's counsel cross-examined both plaintiffs about the injuries they sustained, neck and back pain they experienced before the accident, and their failure to report their prior pain on several occasions to doctors who treated them after the accident.  For example, Koczka had a medical history of hip, back, and neck pain, and previously suffered a herniated disc in his lower back.[2]  The day before the accident, he received a refill of Vicodin that he had been

_____

[2] Koczka testified that the neck pain he experienced "periodically" before the accident was "not the same neck pain" as what he experienced after.

3

prescribed for his hip pain.  Tresch similarly testified on cross-examination about an injury she sustained after a fall in 2008 and complaints of numbness and neck pain between 2010 and 2013, which she described as "not the same" as the pain she had after the accident.[3]

The defendant's expert witness, Dr. Stephen Saris, testified that he reviewed the plaintiffs' medical records and that they both sustained a "soft tissue injury."[4]  He further testified that that opinion was "based on [the plaintiffs'] subjective complaints of pain."  He also opined that the neck surgery that Tresch underwent in February of 2015 was related to her "chronic neck problems that started at least six years before the accident."

During a recess towards the end of Dr. Saris's testimony, the judge stated to counsel,

"I did want to raise one issue though because having heard this testimony . . . I included question one about causation at the request of the defense but I, I mean, seems like everyone agrees that some degree of injury was

---

[3] Tresch testified that she went to her doctor a few times in 2012 and 2013 due to numbness in her left arm, but that it "didn't last that long" and "went away by itself."  She also testified that she was not experiencing any numbness, pain, or discomfort just prior to the accident, and was not receiving treatment for any neck, back, or shoulder condition.

[4] Specifically, Dr. Saris concluded in his report that Tresch "had a muscular soft tissue injury" that was "extremely painful in the short term" but resolved by July of 2015, and that Koczka "developed a soft tissue, muscular, spinal injury that resolved within 4 months."

4

caused. So I . . . have serious questions about that but I'm gonna protect the record by asking it, and if the answer comes back no we're gonna have to perhaps think about that."

Defense counsel maintained that the jury could disbelieve the plaintiffs' subjective complaints of pain and "could determine that, for example, they didn't suffer any injury in this accident." To that, the judge responded,

"Well, they could but then the questions would be whether that would be reasonable. Because I mean . . . your witness has just said that they both suffered whiplash . . . And all the other records are consistent with that, and . . . the plaintiffs have testified there was more than that. So whether a reasonable jury could say there was no injury, I think is open to question. But I, I'm gonna include that question because you've asked for it. [Y]ou know if they say no then we'll have a debate."

The question that the judge ultimately included on the verdict form asked, "Did June Hanson's negligence cause the plaintiff(s) to sustain injuries?". At the conclusion of trial, the jury returned a verdict for the defendant and found that the accident did not cause either plaintiff to sustain injuries.

On September 27, 2022, the plaintiffs filed a motion for a new trial pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974). On November 2, 2022, the trial judge allowed the motion. In a comprehensive memorandum and order the judge concluded that the verdict was against the weight of the evidence and "resulted from 'bias, misapprehension, or prejudice'" (citation omitted). Quinn v. Mar-Lees Seafood, LLC, 69 Mass. App. Ct. 688, 702

5

(2007). The judge considered "why this jury reached a verdict without evidence," and pointed to the "relatively young" age of the jurors, the length of their deliberations, and "prejudicial matters" that defense counsel "improperly injected" into the trial.[5] The judge noted, however, that his decision did not "turn[] upon anything other than the weight and sufficiency of the evidence."

The case was retried in October 2023, and the jury returned a verdict for the plaintiffs. Final judgment entered on February 27, 2024, and the defendant subsequently filed a notice of appeal.[6]

Discussion. The defendant argues that the judge abused his discretion in allowing the plaintiffs' motion for a new trial because the verdict was not against the weight of the evidence and did not result in a miscarriage of justice. Although there is a measure of persuasiveness to the defendant's argument, we do not agree that the judge abused his discretion.

---

[5] As examples of defense counsel's conduct, the judge cited, inter alia, his repeated assertions of his opinion that Tresch was lying on the stand, his allegation that Koczka withheld information from his physicians, and his suggestion during his opening argument that the plaintiffs had "unfairly forced his client to spend money on experts."

[6] The defendant's notice of appeal designated only the order allowing the plaintiffs' motion for a new trial as the order being appealed. The defendant raises no argument on appeal regarding the second jury trial.

"The judge should only set aside a verdict as against the weight of the evidence when it is determined that the jury 'failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law'" (citation omitted). O'Brien v. Pearson, 449 Mass. 377, 384 (2007). Such an order is only appropriate where the judge is convinced that "the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion." Meyer v. Wagner, 57 Mass. App. Ct. 494, 504-505 (2003), quoting W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 748 (1993). We review the allowance of a motion for a new trial for abuse of discretion, see Meyer, supra at 504, "extending 'considerable deference' where the trial judge and motion judge were the same" (citation omitted). Parsons v. Ameri, 97 Mass. App. Ct. 96, 103 (2020). See W. Oliver Tripp Co., supra at 747 ("the occasions on which appellate courts have thought the broad discretion of a trial judge to have been abused on such a motion are extremely rare; like snow storms in mid-May, such occasions may occur, but they induce considerable astonishment when they do").

Here, we discern no abuse of discretion. The judge explained his reasons for allowing the motion in a careful memorandum. The judge recounted the concern he had "[f]rom the

7

outset" of the trial that "every reasonable jury, faced with the evidence in this case, would necessarily have to find that this rear-end accident . . . caused injury to the [p]laintiffs." He reviewed the evidentiary record, listened to the trial recording, and reflected on the case, and then concluded that it was "beyond dispute" that the plaintiffs incurred medical expenses after the accident as a result of their transport by ambulance to the hospital and evaluation in the emergency room. The judge noted that "[n]o doctor testified that these services were medically unnecessary" and that there was "no dispute between experts on that point." The judge also expressed his view that Dr. Saris "did not contradict the plaintiffs' testimony that the collision had caused them to suffer injury" or "question the observations of the [h]ospital personnel or physicians who examined the plaintiffs and diagnosed injuries." See W. Oliver Tripp Co., 34 Mass. App. Ct. at 748-749 ("That which is reasoned and explained is not a likely candidate for categorization as arbitrary, capricious, whimsical, or idiosyncratic unless, upon inspection, it is simply divorced from the reality of the record"). Contrast Hebard v. O'Brien, 34 Mass. App. Ct. 912, 912 (1993) (no basis in record to conclude that judge gave "careful consideration" to all evidence where judge only stated in "perfunctory memorandum" that verdict "was against the weight of the evidence").

8

The record here provides substantial support for the judge's decision. There was evidence that following the collision, Tresch complained of numbness in her left side; Koczka reported striking his head and complained of "stiffness in his neck"; the plaintiffs were evaluated by first responders and transported to the hospital by ambulance;[7] Koczka sustained an abrasion to his knee and a "contusion" on his head; both plaintiffs were evaluated in the emergency room; Tresch underwent MRI scans, CT scans, and X-rays at the hospital; and Tresch was provided with medication and discharged with prescriptions for her pain. Dr. Saris did not question the necessity of these evaluations and services, and indeed agreed with the providers in the emergency room as it related to the plaintiffs' treatment.

The defendant points to Dr. Saris's testimony that his opinion was based on the plaintiffs' subjective complaints of pain and argues, with some measure of persuasiveness, that if the jurors did not find the plaintiffs complaints to be credible, there would be no support for an opinion that they had

---

[7] The record also shows that Tresch was "unable to self extricate" from the vehicle after the accident, and that paramedics "wouldn't move her till they had the collar on" and subsequently "took her out" of the vehicle. Similarly, after Koczka spoke with paramedics, they "took C spine precautions with a collar" and told him that they were "getting [him] on a backboard also."

sustained such injuries.  However, Dr. Saris did not question the plaintiffs' complaints of pain or conclude that they suffered no injury, and opined that the injury they sustained was "commonly seen after accidents of this description." Rather, he disputed the plaintiffs' contention that all of their subsequent injuries and treatments could be attributed to the accident.  Where even the defendant's expert agreed that there was some injury, the judge did not make a clear error of judgment in determining that the verdict was unreasonable and unsupported by the evidence.  On this record, we cannot say that

the judge abused his discretion in allowing the plaintiffs' motion for a new trial.[8,9]

Order allowing plaintiffs'
  motion for new trial
  affirmed.

Judgment entered February 27,
  2024, affirmed.

By the Court (Massing,
  Neyman & Wood, JJ.[10]),

Clerk

Entered:  August 27, 2025.

---

[8] We are not persuaded by the defendant's argument that the judge removed the element of causation and shifted the burden of proof.  Rather, the judge determined, based on the evidence presented at trial, that no reasonable juror could have concluded that the defendant's conduct did not cause any injury to the plaintiffs.

[9] Contrary to the defendant's claim, the judge did not allow the motion for a new trial on the basis of defense counsel's questioning and statements.  Instead, the judge considered "plausible explanations" as to why the jury returned a verdict that was against the weight of the evidence.  We defer to the judge's view that defense counsel's cross-examination "likely" led the jury "to a result that lacks reasonable support in the evidence."  See Gath v. M/A-Com, Inc., 440 Mass. 482, 495 (2003).  We do note, however, that the judge's speculation that the jurors' "deviation from the evidence and law" may have been due to their "relatively young" age was unpersuasive and perhaps unwarranted.  That notwithstanding, the judge's analysis was well supported by the record and, affording the judge "considerable deference," as we must, there was no abuse of discretion (citation omitted).  Parsons, 97 Mass. App. Ct. at 103.  See W. Oliver Tripp Co., 34 Mass. App. Ct. at 747.

[10] The panelists are listed in order of seniority.

11